492 So.2d 1309 (1986)
David Carl ASHCROFT, Petitioner,
v.
CALDER RACE COURSE, INC., Respondent.
No. 66934.
Supreme Court of Florida.
July 10, 1986.
Rehearing Denied September 12, 1986.
*1310 Barry Richard of Roberts, Baggett, LaFace & Richard, Tallahassee, for petitioner.
Diane H. Tutt of Blackwell, Walker, Fascell & Hoehl and James C. Blecke, Miami, for respondent.
SHAW, Justice.
We have for review Ashcroft v. Calder Race Course, Inc., 464 So.2d 1250 (Fla. 3d DCA 1985), because of conflict with the decisions of this Court in Kuehner v. Green, 436 So.2d 78 (Fla. 1983), and Blackburn v. Dorta, 348 So.2d 287 (Fla. 1977). We have jurisdiction under article V, section 3(b)(3), Florida Constitution, and quash the decision under review.
Petitioner Ashcroft, a jockey racing at Calder Race Course, was injured when his horse veered across the race course and toward an exit gap. He lost control, fell to the ground, and was run over by another horse, rendering him a quadriplegic. He sued respondent Calder Race Course, Inc. for damages, alleging that Calder's negligent placement of the exit gap caused the accident and his resultant injury. The trial court, over Ashcroft's objection, instructed the jury on assumption of risk. The jury rendered a verdict finding Calder negligent and Ashcroft not negligent, but finding that Ashcroft had assumed the risk of the danger of which he complained. Damages of $10,000,000 were assessed. The trial court denied Calder's motion for judgment on the verdict in its favor and found Calder liable, but upon motion deemed the verdict excessive and granted Calder's motion for remittitur or, in the alternative, a new trial. The award reduced to $5,000,000 was declined by Ashcroft, and the cause was therefore subject to a new trial. On appeal, the district court found abundant evidence supporting the jury's finding that *1311 Ashcroft assumed the risk and reversed the trial court's order in failing to enter judgment for Calder.
This Court rejected the doctrine of contributory negligence as a complete bar to a plaintiff's recovery from a defendant whose negligence contributed to his injury in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). We rejected the doctrine of implied assumption of risk as a complete bar to a plaintiff's otherwise meritorious claim for recovery in Blackburn. Blackburn expressly had no effect, however, on the doctrine of express assumption of risk, including "express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport." 348 So.2d at 290.
We had occasion to affirm the viability of the doctrine of express assumption of risk in the contact sport setting in Kuehner. We pointed out, however, that
a participant in a contact sport does not automatically assume all risks except those resulting from deliberate attempts to injure. Express assumption of risk, as it applies in the context of contact sports, rests upon the plaintiff's voluntary consent to take certain chances. This principle may be better expressed in terms of waiver. When a participant volunteers to take certain chances he waives his right to be free from those bodily contacts inherent in the chances taken. Our judicial system must protect those who rely on such a waiver and engage in otherwise prohibited bodily contacts.
436 So.2d at 80 (emphasis in original, citation omitted). Assuming that express assumption of risk applies to horse racing, it is clear from the above quotation that express assumption of risk waives only risks inherent in the sport itself. Riding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing. We therefore find as a matter of law that there was no express assumption of risk with respect to the negligent placement of the exit gap and it was error for the judge to instruct the jury on assumption of risk.
The owner or occupier of land has a duty to exercise reasonable care for the protection of invitees. Prosser and Keaton, Law of Torts § 61 (5th ed. 1984):
[I]n the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself. It is for this reason that it is sometimes held that reasonable care requires nothing more than a warning of the danger. But this is certainly not a fixed rule, and all of the circumstances must be taken into account. In any case where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required. This is true, for example, where there is reason to expect that the invitee's attention will be distracted, as by goods on display, or that after a lapse of time he may forget the existence of the condition, even though he has discovered it or been warned; or where the condition is one which would not reasonably be expected, and for some reason, such as an arm full of bundles, it may be anticipated that the visitor will not be looking for it. In some jurisdictions, it is also true where the condition is one, such as icy steps, which cannot be negotiated with reasonable safety even though the invitee is fully aware of it, when, because the premises are held open to him for his use, it is to be expected that he will nevertheless proceed to encounter it. The jury in such cases may be permitted to find that obviousness, warning or even knowledge is not enough.
Id. (footnotes omitted). Accord Restatement (Second) of Torts § 343A (1965):

*1312 Known or Obvious Dangers
(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Id. (emphasis supplied).
A landowner who assumes the task of providing the physical facility upon which a sport is to be played has a duty to exercise reasonable care to prevent foreseeable injury to the participants that includes foreseeing that they may risk a known danger in order to participate. If injury occurs due to negligent maintenance of the facility, the landowner may be held liable.
The trial court granted a motion of remittitur reducing the jury award by half to $5,000,000 and ordered a new trial on both liability and damages when petitioner declined the reduced award.[1] After hearing argument on whether to grant the remittitur, the judge commented
Actually I have taken all of that into consideration, and I take into consideration that Mr. Highsmith's conclusionary argument to the jury was to the effect that he wanted Mr. David Ashcroft to be adequately compensated.
What I am going to do  and I have considered this case day in and day out and many sleepless nights, because I do have a conscience, too, just like you all, and I know your positions in this particular matter.
I also have to consider the defendant, Calder Race Track, as well, and when I consider their degree of negligence and Mr. Ashcroft's negligence, I am of the opinion that I think that an adequate compensatory award would probably be, and I am going to designate the figure of, five million dollars.
I also look at the fact that if he does receive this award, that this sum certainly would adequately compensate him, knowing that his attorneys will probably get 40 percent of that particular figure. If he wisely invests the remainder of his net, I think that would probably adequately compensate him for the rest of his life.
Therefore, I am going to reduce the figure to $5,000,000.
Later, in the order of remittitur, the court found as follows:
The Court find that the damages awarded by the jury are excessive in the amount of $5,000,000.00. The Court finds that the motion for remittitur filed by the Defendant, "Calder Race Course, Inc.", should be granted and is granted, for the reasons expressed by this Court at the hearing on October 18, 1982, said reasons including:
a. The Court's consideration of the evidence presented concerning David Ashcroft's future maintenance and medical expenses and the evidence presented concerning David Ashcroft's loss of future earning capacity in light of the verdict returned by the jury in an amount of $10,000,000.00;
b. The Court's consideration of the evidence concerning Calder Race Track's degree of negligence and David Ashcroft's negligence;
c. This Court's consideration of the final argument presented by counsel for the Plaintiff to the effect that Plaintiff's counsel sought adequate compensation for David Ashcroft;
d. This Court's consideration of the fact that $5,000,000.00 would be adequate compensation under the evidence presented and that an amount of $10,000,000.00 is excessive for the reasons advanced by this Court at the hearing on October 18, 1982.
Petitioner points out that the criteria for the exercise of the power to order a remittitur is as follows:

*1313 The record must affirmatively show the impropriety of the verdict or there must be an independent determination by the trial judge that the jury was influenced by considerations outside the record.
... [T]he trial judge does not sit as a seventh juror with veto power. His setting aside a verdict must be supported by the record, as in Cloud v. Fallis, Fla. 1959, 110 So.2d 669, or by findings reasonably amenable to judicial review. Not every verdict which raises a judicial eyebrow should shock the judicial conscience.
Laskey v. Smith, 239 So.2d 13, 14 (Fla. 1970). See also Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). Based on this criteria, petitioner argues that there is nothing in the record, or any indication of anything outside the record, to suggest that the jury was influenced by passion, prejudice, or gross mistake and the trial court's order makes no findings regarding the impropriety of the jury verdict. Moreover, petitioner argues, respondent failed to seriously contest the damages issue before the jury, offering no rebuttal witnesses and only perfunctory cross examination of one of the five main witnesses put on by petitioner on the damages issue. Petitioner suggests that respondent is attempting to shift the responsibility for assessing damages from the jury to the courts.[2]
Respondent counters that the correct standard of review is set forth in Baptist Memorial Hospital, Inc. v. Bell, 384 So.2d 145 (Fla. 1980).
The discretionary power to grant or deny a motion for new trial is given to the trial judge because of his direct and superior vantage point. In accordance with Wackenhut, the judge must give express reasons which will support his finding that the verdict is either against the manifest weight of the evidence or was influenced by consideration of matters outside the record... .
In reviewing this type of discretionary act of the trial court, the appellate court should apply the reasonableness test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
Id. at 146.
The thrust of respondent's argument is that a reasonable man could have taken the evidence concerning petitioner's future medical costs and lost net earnings, reduced to their present money value, and calculated their value when invested over petitioner's projected life span to arrive at a figure of $5,000,000 damages, which would include an indeterminate, but, in respondent's view, adequate sum for pain and suffering. Respondent would then have us apply the reasonable man test and determine that the trial judge did not abuse his broad discretion in awarding damages of $5,000,000. Respondent's argument might have merit if the trial judge had been the trier of fact. The difficulty with the argument is that it takes the jury, which was the trier of fact, entirely out of the equation and treats its verdict of $10,000,000 as a nullity.
The trial judge's broad discretion is exercised in the context of determining whether a jury's verdict is against the manifest weight of the evidence or was influenced by consideration of matters outside the record. We agree with petitioner that the trial judge abused his discretion in ordering remittitur and granting a new trial as an alternative. There is nothing in the remittitur order suggesting there was any impropriety in the jury's verdict. There are no reasons given to support the notion that the verdict was against the manifest weight of the evidence or that the jury was influenced by matters outside the record. Instead, the judge appears to have simply reached different conclusions than the jury *1314 on whether petitioner was negligent[3] and on the amount of damages to be awarded. A trial court's discretion, while broad, is not unbridled.
In tort cases damages are to be measured by the jury's discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate.
Bould v. Touchette, 349 So.2d 1181, 1184-85 (Fla. 1977).
The decision below is quashed. The cause is remanded with instructions to reinstate the jury verdicts and enter judgment.
It is so ordered.
ADKINS, EHRLICH and BARKETT, JJ., concur.
OVERTON, J., dissents with an opinion, in which McDONALD, C.J., and BOYD, J., concur.
OVERTON, Justice, dissenting.
I dissent. It is unrefuted that the jury was erroneously instructed concerning assumption of the risk. The jury returned a clearly inconsistent special verdict, finding, on the one hand, that the plaintiff was not negligent, and, on the other hand, that the plaintiff had assumed the risk under instructions that this finding barred recovery. Under these circumstances, I would not allow the trial judge or appellate court to pick and choose what part of the verdict should be accepted and what part rejected. When a jury is erroneously instructed and comes to an inconsistent verdict, I find there is no choice but to require a new trial.
McDONALD, C.J., and BOYD, J., concur.
NOTES
[1] Assuming the remittitur itself was proper, the correct remedy would have been to order a new trial on damages only. Gould v. National Bank, 421 So.2d 798 (Fla. 3d DCA 1982). This issue is mooted by our determination that the remittitur was not proper.
[2] On this point, see Breen, Damages in Personal Injury Actions: A Perspective from the Corporate Defendant, 5 Trial Advoc.Q. (Apr. 1986).
[3] The jury specifically found in a special verdict interrogatory that petitioner was not negligent.