IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0030
════════════
 
TXI Operations, L.P., 
Petitioner,
 
v.
 
David Perry, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued January 26, 
2006
 
 
            
Justice Hecht, joined by 
Justice Medina and Justice Willett, dissenting.
 
 
            
The morning was clear and hot, the sun brightly shining, as the 
18-wheeler sand-and-gravel truck lumbered along the rough dirt road from the 
main highway over to the Dolen sand pit. Behind the 
wheel sat David Perry, 36. For seven years, he had been driving rigs for 
Campbell Concrete & Materials, L.P. That day, his job was hauling sand from 
the Dolen pit to Campbell’s ready-mix concrete plant about an 
hour away.
            
TXI Operations, L.P. owned the Dolen sand pit 
and maintained the three-mile dirt road that ran from the highway through the 
woods to the facility. Trucks would enter the sand pit, load, weigh at the scale 
house, and then leave the way they came in. The road was wide enough for trucks 
to pass each other coming and going. Eight to twelve thousand trucks a year went 
in and out. The day Perry was injured, seventy trucks 
crossed the scales, thirty-seven of them driven by twelve Campbell truckers, three by 
Perry himself.
            
The heavy 18-wheelers — each weighed some 30,000 pounds empty and 80,000 
pounds loaded — were hard on the road, especially when it was wet. The road was 
rough as a scrub board and filled with potholes. TXI graded the road regularly, 
though not frequently enough to suit the drivers, who often complained about how 
bumpy it was, to little avail. TXI encouraged truckers to slow down, especially 
on blind curves, posting speed limit signs from 15 mph to 25 mph along the 
road.
            
Jeff Casey, a Campbell driver, testified: “We ran that road so much that 
we kind of knew where the [rough] areas were, but right there at the cattle 
guard, it was always a little bit worse right there.” The cattle guard to which 
he referred was toward the end of the road, not far from the sand pit and scale 
house. The road up to the cattle guard ran straight for half a mile or so. The 
cattle guard was only one truck wide and plainly visible. Stretched indolently 
in front of the cattle guard, as one entered the plant, lay a large pothole. The 
day of Perry’s accident, the pothole was nine inches deep (other days it was 
deeper) and wide enough that a truck could not avoid it and still get through 
the cattle guard. TXI’s posted speed limit there was 
15 mph, although a trucker could not drive an empty truck even 10 mph through 
the pothole without being bounced around the cab and risking injury. But in 
fact, no one was injured, ever. Scores of truckers crossed the cattle guard 
thousands of times without injury, except for one fateful day in May.
            
Perry first crossed the cattle guard in his empty truck a little before 
10:30 a.m. He was running with Casey, who was driving the truck right ahead of 
him. The two trucks loaded, weighed, and left, crossing the cattle guard on 
their way out. About two hours later they returned with Casey again in the lead, 
crossing the cattle guard as before, both on their way in and on their way out. 
At 3:00 p.m., they were back, this time with Perry in the lead. At the cattle 
guard, he hit the pothole going 10-15 mph and bounced the truck, jamming his 
head into the roof of the cab. He radioed back to Casey, who had seen Perry’s 
truck bounce, telling him what had happened. The two continued on to the plant, 
loaded, weighed, and left without further incident.
            
Perry did not report his injury for several weeks. Three days before the 
two-year statute of limitations would have run, he sued TXI for his injuries.[1]
            
Generally — with an exception I discuss below — a person who knows that a 
condition of his property poses an unreasonable risk of harm to invitees must 
use ordinary care to protect them from danger, either by adequately warning them 
or making the condition reasonably safe.[2] The Court holds that there is evidence in 
this case that TXI failed to discharge this duty to Perry. I respectfully 
disagree.
            
TXI does not challenge, so therefore I must assume, that potholes in dirt 
roads leading to sand pits present an unreasonable risk of harm to experienced 
18-wheeler sand-and-gravel haulers. This, of course, is preposterous. Potholes pock the surface of the civilized world. If 
potholes — all but yawning chasms capable of suddenly swallowing up an entire 
vehicle — posed an unreasonable risk of harm to anyone, let alone experienced 
and reasonably careful drivers, whole swaths of civilization would have to be 
closed off to human traffic. Manhattan would be the first to shut down, but 
no city, town, or village would escape. Across the planet, ground transportation 
would be brought to a halt. Commerce would cease. The end could not be averted 
by posting adequate warnings. Signs at city limits — Warning! Potholes! — would hardly be adequate. Each pothole would require its 
own warning sign. Even if available resources could supply enough signs, 
warnings that unreasonable danger is everywhere provide no warning that it is 
anywhere in particular.
            
Potholes do pose a risk of harm, no question. But the risk is simply not 
an unreasonable one unless the pothole is one of those rare, menacing kinds that 
lure unsuspecting travelers into danger. The potholes that permeated the dirt 
road to the Dolen sand pit were all of the ordinary 
variety. As one Campbell driver testified, they were “all up 
and down the road”. Nothing about the one at the cattle guard posed a 
significantly greater risk of harm than any of the others. To the contrary, 
because the pothole was usually there, and did not, in the words of one driver, 
“sneak[] up on you”, as potholes are sometimes wont to do, drivers knew to be 
careful, and were careful, as they necessarily slowed to cross over the narrow 
cattle guard. Casey testified that the road was not dangerous: “whenever the 
road was bad,” he said, “we all knew to slow it down”. Another Campbell driver, asked why he did not consider the pothole at the 
cattle guard dangerous, stated:
 
Why would I consider it not dangerous? I mean, it wasn’t, it 
wasn’t dangerous, no. It was not dangerous. It was a pothole; but if you hit it 
just right, yeah, it would jar you.
 
            
But as I say, TXI does not argue that the pothole did not pose an 
unreasonable risk of harm, so I turn to the argument TXI does make: that its 
warning, a 15 mph maximum speed limit sign, was adequate under the 
circumstances. The Court seems to think that a posted 15 mph speed limit means 
that a person can safely drive up to 15 mph no matter what. After Perry sued, 
TXI restaged the accident using the same truck Perry was driving the day he was 
injured. The test driver hit a pothole like the one Perry had described at 10 
mph and hit his head in the cab. So if the speed limit sign means what the Court 
seems to think it does, then there is some evidence to support the jury’s 
finding that the warning was inadequate.
            
But that is not what a maximum speed limit sign means. Texas law provides that 
“[a] speed in excess of [legal limits] is prima facie evidence that the speed is 
not reasonable and prudent and that the speed is unlawful.”[3] The inverse is not true: a speed below 
the legal limit is not, prima facie, reasonable and prudent. To the contrary, 
Texas law 
provides that, regardless of any maximum speed limit set by law, “[a]n operator 
. . . may not drive a vehicle at a speed greater than is reasonable and prudent 
under the conditions and having regard for actual and potential hazards then 
existing”.[4] Courts uniformly hold that a vehicle’s 
speed may be excessive even though it is below the posted limit.[5] Perry could not argue that a 15 mph speed 
limit posted by public authorities licensed him to drive up to 15 mph regardless 
of the circumstances, and there is no more basis for 
the argument simply because the speed limit was posted by TXI. Indeed, Casey, 
the Campbell 
driver Perry was running with, testified that the speed limit signs only told 
him “more or less just to be watchful”. Perry testified that he thought a posted 
speed limit signaled that a slower speed was safe, but tellingly, he could not 
recall what the speed limit was at the cattle guard, and he did not testify that 
he looked over at the speed limit sign and thought to himself, “I can drive that 
fast safely, no matter what.”
            
It was not feasible, of course, for TXI to post speed limits that were 
safe under all conditions because road conditions were constantly changing. When 
the road was graded, it was smoother. When it rained, the road surface was 
worse. The 40-ton trucks constantly lumbering over the road tore into its 
surface. A safe speed on a dry, flat road would not be safe on a rough, wet one, 
and no one could reasonably expect truckers to drive as slowly on good stretches 
of road as they had to on bad stretches. As a practical matter, the warnings TXI 
gave were the only ones it could give: slow down to a speed that allows actual 
road conditions to be assessed.
            
Moreover, TXI’s speed signs actually worked. 
Truckers drove through the potholes without incident. Had Perry driven up to the 
cattle guard the first time, noted the 15 mph speed limit sign, thought to 
himself that the sign assured a safe speed, driven through the pothole, and been 
injured, he could at least argue that the sign misled him. But that is not, 
according to him, what happened. Perry, like all the other truckers on the road 
to the Dolen sand pit, slowed to where the bumps could 
be navigated safely. Nor is there evidence that any driver ever drove the road 
thinking, contrary to law and reason, that the posted speed was safe, regardless 
of the circumstances. In all of the thousands of times truckers crossed the 
cattle guard, there is no evidence of a single injury, except Perry’s. And Perry 
himself crossed the cattle guard four times in five hours without incident the 
same day he was injured.
            
The Court concludes that reasonable minds can disagree about whether 
TXI’s speed limit gave adequate warning of the dangers 
of the cattle guard pothole when there was one accident in thousands of 
crossings. What warning could no reasonable person think inadequate? Here, the 
Court is a little vague. A “be careful” warning will not do, the Court says, 
because it is too general.[6] The speed limit sign was inadequate, 
according to the Court, even though it did not “necessarily mean the driver 
should expect the posted limit to be a safe speed under all circumstances”,[7] because it did not “identify the 
particular hazard”.[8] For goodness’ sake, the “particular 
hazard” was a plain old pothole, not a cliff overhanging the ocean. So 
should warning signs be site-specific, one per pothole? Maybe something 
like:
 

 
 
 
Scores, maybe 
hundreds, would have been required on this one short road alone. This probably 
would not satisfy the Court:
 

 
 
 
 
 
 
 
 
[9]
 
Since 
“[r]ural unpaved roads with potholes at cattle guards 
are quite common in this state”,[10] as the Court acknowledges, one cannot 
help but wonder why any warning at all is required. But if warnings must be 
given, owners should be told straight out what is adequate, so they can ensure 
safety and avoid liability. On this rather important subject the Court offers 
nothing helpful. I guess we’ll know an adequate warning when we see it.
            
If TXI was required to warn of rough conditions on its road, I think the 
warnings it gave were adequate as a matter of law. There is also another reason, 
besides the fact that the potholes posed no unreasonable risk of harm, why no 
warning was required: road conditions were open and obvious. Perry argues that 
in Parker v. Highland Park, Inc.,[11] we discarded the principle that there is 
no duty to warn of open and obvious conditions, even when the risk of danger is 
fully apparent and avoidable, because a plaintiff’s failure to avoid injury due 
to an open an obvious condition is no more than one factor to be taken into 
account in comparing and assessing the responsibility of both the plaintiff and 
the defendant. As we explained long ago, that argument over-reads 
Parker.
            
In Parker, an elderly lady visiting friends in an upstairs 
apartment left after dark and fell, attempting to descend an unlit stairwell. 
She sued the owner of the apartment complex, alleging that the dark stairwell 
was an unreasonably dangerous condition. The owner countered that it owed her no 
duty of care because the darkness in the stairwell was open and obvious.[12] We rejected the argument, holding that 
liability should be determined under principles of contributory negligence and 
comparative responsibility.[13]
            
The flaw in the no-duty argument in Parker was that the stairwell 
was made no less dangerous by the fact that the darkness was open and obvious. 
The plaintiff and her hosts all tried to exercise caution, descending together 
slowly with a flashlight, but the plaintiff fell anyway because of an unseen 
step.[14] In such circumstances, a premises owner 
is not excused from liability merely because the risk of danger was open and 
obvious. The obviousness of the risk did not allow the plaintiff to avoid it. It 
remains a general rule, however, that a plaintiff must show that a defendant 
breached a duty of care. As we explained only a few years after Parker 
was decided:
 
The term “no-duty,” as used in Parker, referred to the 
oddity that had uniquely developed in Texas to confuse negligence law. It meant that 
a plaintiff had the burden to negate his own knowledge and his own appreciation 
of a danger. The rule that the plaintiff does not have the burden to obtain 
findings that disprove his own fault does not, however, mean that a plaintiff is 
excused from proving the defendant had a duty and breached it. A plaintiff does 
not have the burden to prove and obtain findings that he lacked knowledge and 
appreciation of a danger; he must, however, prove the defendant had a duty and 
breached it.[15]
 
It is one 
thing to reject the argument that an apartment owner has no duty to see to it 
that tenants and their guests can safely exit the premises; it is quite another 
to argue, as Perry does, that a landowner must warn truckers to be careful 
driving through potholes on a dirt road that are obvious and safely traversed 
without difficulty.
            
In Lugo v. Ameritech Corp.,[16] the Michigan Supreme Court rejected a 
pedestrian’s claim that a pothole in a parking lot was unreasonably dangerous, 
holding that the owner owed her no duty because the condition was open and 
obvious:
 
[T]ypical open and obvious dangers 
(such as ordinary potholes in a parking lot) do not give rise to [a uniquely 
high likelihood of harm]. . . . [T]he condition is open and obvious and, thus, 
cannot form the basis of liability against a premises possessor.[17]
 
Most other 
states hold that the possessor of premises has no duty to warn of open and 
obvious conditions when any danger can be fully appreciated and averted by a 
reasonable person.[18] This is the rule of the Restatement 
(Second) of Torts,[19] and is still the law in Texas.
            
With respect, holding the owners of dirt roads liable for inadequately 
warning sand-and-gravel 18-wheeler truckers how to drive through potholes mocks 
the law of premises liability as well as common sense. I would render judgment 
for TXI, and accordingly, I dissent.
 
__________________________________
                                                                        
Nathan L. Hecht
                                                                        
Justice
 
 
Opinion delivered: February 27, 
2009
 







[1] 
At trial, TXI contested whether Perry had been injured as he claimed, whether it 
occurred on the day he asserted, and whether there was a pothole near the cattle 
guard. Although the jury found TXI and Perry both negligent, I have summarized 
the evidence most favorable to Perry.

[2] 
State Dep’t of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 
1992).

[3] 
Tex. Transp. Code § 545.352(a).

[4] 
Id. § 
545.351(b)(1).

[5] 
See, e.g., Hokr v. Burgett, 489 S.W.2d 928, 930 (Tex. Civ. App.–Fort Worth 1973, no writ) (“Speed may be excessive 
even though it is below the posted speed limit. Although a motorist may not be 
exceeding the speed limit, he is under a duty to drive no faster than a person 
of ordinary prudence under the same or similar circumstances.” (citations omitted)); Fitzgerald v. Russ Mitchell 
Constructors, Inc., 423 S.W.2d 189, 191 (Tex. Civ. 
App.–Houston [14th Dist.] 1968, writ ref’d n.r.e.) (“The fact that [appellant] was driving below the 
speed limit of a presumed 30 miles per hour . . . does not relieve her of the 
common law duty to operate her vehicle at a speed at which an ordinarily prudent 
person would operate a vehicle under the same or similar circumstances.”); 
Billingsley v. Southern Pac. Co., 400 S.W.2d 789, 794 (Tex. Civ. App.–Tyler 1966, writ ref’d 
n.r.e) (“Although a motorist may not be exceeding the 
‘legally posted speed limit,’ nevertheless, he is under the duty to drive no 
faster than an ordinarily prudent person in the exercise of ordinary care would 
drive under the same or similar circumstances. A speed may be held excessive 
under the circumstances although below the ‘legally posted limit.’”); Seay v. Kana, 346 S.W.2d 384, 386 (Tex. Civ. App.–Houston 1961, no writ) (“Even if [appellant] were 
not exceeding it [the speed limit], he was under the duty not to drive faster 
than an ordinarily prudent person in the exercise of ordinary care would drive 
under the same or similar circumstances.”); Vardilos v. Reid, 320 S.W.2d 419, 423 (Tex. 
Civ. App.–Houston 1959, no writ) (“The fact that 
[appellant] was driving below the speed limit of 30 miles per hour . . . does 
not relieve him of the common law duty to operate his vehicle at a speed at 
which an ordinarily prudent person in the exercise of ordinary care would 
operate a vehicle under the same or similar circumstances.”); Morrison v. 
Antwine, 51 S.W.2d 820, 821 (Tex. Civ. App.–Waco 1932, no writ) (“A person may be guilty of 
negligence or contributory negligence in operating his car at an excessive rate 
of speed even though . . . the maximum limit as fixed by the statute is not 
exceeded . . . .”).

[6] 
Ante at ___.

[7] 
Ante at ___.

[8] 
Ante at ___.

[9] 
Unattributed photograph found at supanet.com 
(http://www.supanet.com/motoring/car_gallery/gallery/939/1/).

[10] Ante at ___.

[11] 565 S.W.2d 512 (Tex. 1978).

[12] Id. at 513, 514.

[13] Id. at 517, 521.

[14] Id. at 514.

[15] Dixon v. Van Waters &Rogers, 682 S.W.2d 
533, 533-534 (Tex. 1984) (per curiam) (citation omitted).

[16] 629 N.W.2d 384 (Mich. 2001).

[17] Id. at 388.

[18] See Jones Food Co. v. Shipman, 981 So. 2d 355, 362-363 (Ala. 2006) 
(landowner has no duty to warn of open and obvious hazards, even if invitee 
failed to perceive the risk of the condition); McGlothen v. Municipality of Anchorage, 991 
P.2d 1273, 1279 (Alaska 1999) (landowner has no duty to warn of open and obvious 
condition of which invitee is aware); Kuykendall v. Nugent, 504 S.W.2d 
344, 345 (Ark. 1974) (“The duties of owners and occupiers of land to business 
invitees usually end when the danger is either known or obvious to the invitee. 
However, most authorities . . . recognize that under some circumstances a 
possessor of land may owe a duty to the business invitee despite the knowledge 
of the latter.”); Shanley v. Am. Olive 
Co., 197 P. 793, 794 (Cal. 1921) (“[O]wner is 
entitled to assume that such invitee will perceive that which would be obvious 
to him upon the ordinary use of his own senses. He is not required to give to 
the invitee notice or warning of an obvious danger.”); Fleming v. 
Garnett, 646 A.2d 1308, 1312-1313 (Conn. 1994) (landowner has no duty to warn 
invitee of dangerous condition of which invitee was or should have been aware 
of); Ashcroft v. Calder Race Course, Inc., 492 So. 2d 1309, 1311-1312 
(Fla. 1986) (“A possessor of land is not liable to his invitees for physical 
harm caused to them by any activity or condition on the land whose danger is 
known or obvious to them, unless the possessor should anticipate the harm 
despite such knowledge or obviousness.” (quoting Restatement(Second) of Torts § 343A(1) 
(1965))); LeFever v. Kemlite Co., 706 N.E.2d 441, 447-448 (Ill. 1998) (same); 
Kocinek v. Loomis Bros., Inc., 457 
N.W.2d 614, 618 (Iowa 1990) (same); Bonn v. Sears, Roebuck & Co., 440 
S.W.2d 526, 528-529 (Ky. 1969) (landowner owes no duty to warn of “dangers that 
are known to the visitor or so obvious to him that he may be expected to 
discover them”); Isaacson v. Husson Coll., 297 
A.2d 98, 105 (Me. 1972) (adopting Restatement(Second) of Torts § 343A(1) 
(1965)); Lloyd v. Bowles, 273 A.2d 193, 196 (Md. 1971) (“If the injured 
person knew or should have known of the dangerous condition, there is no right 
to recovery . . . the reason for the latter ruling being that the [landowner’s] 
liability is based on a presumption that he has greater knowledge concerning the 
dangerous condition than the invitee.”); O’Sullivan v. Shaw, 726 N.E.2d 
951, 954-955 (Mass. 2000) (“Landowners are relieved of the duty to warn of open 
and obvious dangers on their premises because it is not reasonably foreseeable 
that a visitor exercising (as the law presumes) reasonable care for his own 
safety would suffer injury from such blatant hazards.”); Riddle v. McLouth Steel Prods. Corp., 485 N.W.2d 676, 680-681 
(Mich. 1992) (“[W]here the dangers are known to the invitee or are so obvious 
that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless 
he should anticipate the harm despite knowledge of it on behalf of the 
invitee.”); Richardson v. Corvallis Pub. Sch. Dist. 
No. 1, 950 P.2d 748, 753-756 (Mont. 1997) (landowner owes no duty to warn 
“persons foreseeably upon the premises for physical 
harm caused to them by any activity or condition on the premises whose danger is 
known or obvious to them, unless the possessor should anticipate the harm 
despite such knowledge or obviousness.”); Tichenor v. Lohaus, 
322 N.W.2d 629, 632-633 (Neb. 1982) (adopting Restatement(Second) of Torts § 343A(1) 
(1965)); Tagle v. Jakob, 763 N.E.2d 107, 109-110 (N.Y. 2001) (“We have 
long held that a landowner has no duty to warn of an open and obvious danger.”); 
Wren v. Hillcrest Convalescent Home, Inc., 154 S.E.2d 483, 484 (N.C. 
1967) (per curiam) (“However, defendant was under no 
duty to warn plaintiff, as an invitee, of an obvious condition or of a condition 
of which the plaintiff had equal or superior knowledge.”); Johanson v. Nash Finch Co., 216 N.W.2d 271, 
276-278 (N.D. 1974) (adopting Restatement(Second) of Torts § 343A(1) 
(1965)); Armstrong v. Best Buy Co., 788 N.E.2d 1088, 1089-1091 (Ohio 
2003) (“Where a danger is open and obvious, a landowner owes no duty of care to 
individuals lawfully on the premises.”); Nicholson v. Tacker, 512 P.2d 156, 158 (Okla. 1973) (“It can be 
stated with equal force that the invitor has no duty 
to protect the invitee from dangers which are so apparent and readily observable 
that one would reasonably expect them to be discovered.”); Carrender v. Fitterer, 469 A.2d 120, 123-124 (Pa. 1983) (adopting 
Restatement(Second) of Torts § 
343A(1) (1965)); Coln v. City of 
Savannah, 966 S.W.2d 34, 40-44 (Tenn. 1998) (same), overruled on other 
grounds by Cross v. City of Memphis, 20 S.W.3d 642 (Tenn. 2000); Hale v. 
Beckstead, 116 P.3d 263, 265-270 (Utah 2005) 
(same); Tazewell Supply Co. v. Turner, 189 S.E.2d 347, 349-350 (Va. 1972) 
(landowner owes no duty to warn “if the alleged dangerous condition was open and 
obvious to a person exercising reasonable care for his own safety.”); Monk v. 
Virgin Islands Water & Power Auth., 53 F.3d 1381, 1384-1388 (3d Cir. 
1995) (applying Virgin Islands law) (concluding Restatement(Second) of Torts § 343A(1) 
(1965) is consistent with Virgin Islands’ adoption of comparative fault); Tincani v. Inland Empire Zoological Soc’y, 875 P.2d 621, 630-631 (Wash. 1994) (adopting 
Restatement (Second) of Torts § 
343A(1) (1965)).
                
    A few jurisdictions have held that the openness and 
obviousness of the condition is relevant to whether the landowner breached a 
duty to the invitee, but not the threshold matter of whether the landowner owed 
a duty to warn of the condition. See Markowitz v. 
Ariz. Parks Bd., 706 P.2d 364, 367-368 (Ariz. 1985), abrogated in part by 
statute; Smith v. Baxter, 796 N.E.2d 242, 243-245 (Ind. 2003); Harris 
v. Niehaus, 857 S.W.2d 222, 225-226 (Mo. 
1993).
 
                
    Some other jurisdictions have concluded that this rule 
is inconsistent with their comparative fault statutes, see Koutoufaris v. Dick, 604 A.2d 390, 395-398 
(Del. 1992); Harrison v. Taylor, 768 
P.2d 1321, 1323-1329 (Idaho 1989); Tharp v. Bunge Corp., 641 So. 2d 20, 23-25 (Miss. 1994); Woolston 
v. Wells, 687 P.2d 144, 147-150 (Ore. 
1984), or another state statute, see Vigil v. Franklin, 103 P.3d 322, 328-332 (Colo. 2004) (holding that 
Colo. Rev. Stat. Ann. § 13-21-115 
preempted the doctrine).
 
                
    Lastly, some courts hold that whether a danger is open 
and obvious is merely one factor to be considered. See, 
e.g., Pitre v. La. Tech Univ., 673 
So. 2d 585, 590-591 (La. 1996); Klopp v. Wackenhunt 
Corp., 824 P.2d 293, 297-298 (N.M. 1992); Rockweit by Donahue v. Senecal, 541 N.W.2d 742, 748-749 (Wisc. 1995).

[19] Restatement (Second) of Torts § 343 (“A 
possessor of land is subject to liability for physical harm caused to his 
invitees by a condition on the land if, but only if, he (a) knows or by the 
exercise of reasonable care would discover the condition, and should realize 
that it involves an unreasonable risk of harm to such invitees, and (b) should 
expect that they will not discover or realize the danger, or will fail to 
protect themselves against it, and (c) fails to exercise reasonable care to 
protect them against the danger.”); id. § 343A(1) (“A possessor of land 
is not liable to his invitees for physical harm caused to them by any activity 
or condition on the land whose danger is known or obvious to them, unless the 
possessor should anticipate the harm despite such knowledge or obviousness.”); 
see also Restatement (Second) of 
Torts § 343A cmt. f 
(1965) (“There are, however, cases in which the possessor of land can and should 
anticipate that the dangerous condition will cause physical harm to the invitee 
notwithstanding its known or obvious danger. In such cases the possessor is not 
relieved of the duty of reasonable care which he owes to the invitee for his 
protection. This duty may require him to warn the invitee, or to take other 
reasonable steps to protect him, against the known or obvious condition or 
activity, if the possessor has reason to expect that the invitee will 
nevertheless suffer physical harm.”).
 
                
    The proposed draft of the Restatement (Third) of 
Torts § 18(a) approaches the question of an open and obvious danger in a 
more philosophical manner, but the rule remains the same. Restatement (Third) of Torts: Liability for 
Physical Harm § 18(a) (Proposed Final Draft No. 1, 2005) (“A defendant 
whose conduct creates a risk of physical harm can fail to exercise reasonable 
care by failing to warn of the danger if: 1) the defendant knows or has reason 
to know: (a) of that risk; and (b) that those encountering the risk will be 
unaware of it; and 2) a warning might be effective in reducing the risk of 
physical harm.”); see also id. § 18 cmt. 
f (“Generally appreciated dangers. A defendant 
can be negligent for failing to warn only if the defendant knows or can foresee 
that potential victims will be unaware of the hazard. Accordingly, there 
generally is no obligation to warn of a hazard that should be appreciated by 
persons whose intelligence and experience are within the normal range. When the 
risk involved in the defendant's conduct is encountered by many persons, it may 
be foreseeable that some fraction of them will be lacking the intelligence or 
the experience needed to appreciate the risk. But to require warnings for the 
sake of such persons would produce such a profusion of warnings as to devalue 
those warnings serving a more important 
function.”).