`DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

LISA McWHORTER,

Appellant,

v.

EVENT SERVICES AMERICA, INC. d/b/a
CONTEMPORARY SERVICES COMPANY,

Appellee.

No. 2D2024-2401

_____

January 14, 2026

Appeal from the Circuit Court for Pinellas County; Amy M. Williams,
Judge.

Thomas J. Seider of Brannock Berman & Seider, Tampa; and William H.
Winters, Marc E. Yonker, and Patrick Brannon of Winters & Yonker, P.A.,
Tampa, for Appellant.

Allysa M. Reiter of Wicker Smith O'Hara McCoy & Ford, P.A., Fort
Lauderdale, for Appellee.


LUCAS, Chief Judge.

While leaving a Tampa Bay Rays baseball game in July of 2021,

Lisa McWhorter tripped and fell in the entrance rotunda of Tropicana

Field. She claimed that she tripped because of a metal battery case,

roughly the size of a shoe box,[1] that a security guard employed by Event Services America, Inc., had left in the walkway. Although Event Services conceded it was responsible for maintaining the rotunda at the time of the accident, the trial court entered summary judgment in its favor. The court held that Event Services had no duty to warn Ms. McWhorter of the tripping danger the battery case might have posed and that leaving the battery case in the walkway did not create a dangerous condition. We affirm the trial court's ruling as to the former determination but reverse as to the latter.

I.

The summary judgment facts of this case are not very complicated and, in many respects, are undisputed. Besides a portion of the deposition transcript of Ms. McWhorter, we have a bird's eye video recording that depicted the pertinent events leading up to Ms. McWhorter's fall. The video showed a security guard carrying a metal battery case and walking through a fairly open walkway rotunda of Tropicana Field. The rotunda was well lit and had a green floor painted to depict a miniature baseball diamond. There were only a few people visible in the rotunda at the time of the recording. The security guard set the battery case down on the floor, before walking a few feet away to pick up what looked to be a piece of trash. He then turned about in a slightly different direction from the way he had come, leaving the battery case on the floor. Event Services did not proffer any evidence as to why the guard set the case down in the walkway or why he didn't retrieve it immediately after picking up the piece of trash.

---

[1] Apparently, the battery was for a metal detector. Photographs of tape measurements of the case reflect it was approximately six inches high, five-and-one-quarter inches wide, and fourteen inches long.

2

Meanwhile, a group of four people were making their way across the rotunda, their path crossing approximately where the security guard had left the battery case. None of those four people tripped over the case, but Ms. McWhorter, who had been walking in the same direction a few feet behind them, did.[2] The toe of her right foot appears to have caught on the case, and she fell to the ground in a forward, tumbling motion.

All of the foregoing occurred in less than a minute of time. Within seconds of the accident, another employee who happened to be nearby picked up the metal case and moved it out of the way, while the security guard who had left the case returned to Ms. McWhorter who was still lying on the ground. Eventually, emergency medical personnel arrived to render aid to Ms. McWhorter.

In her deposition, Ms. McWhorter testified that she never saw what she had tripped over. She admitted the battery case wasn't concealed, that it had been left out in the open in the rotunda walkway, and that she had been looking to her right before she fell. However, she did not see the case. Ms. McWhorter further stated that when the security guard returned after her fall, he said he was sorry for leaving the case on the floor.

Event Services moved for summary judgment. The majority of its argument revolved around the contention that the metal battery case was

_____

[2] Event Services suggests that the four people must have seen the case and avoided it and that, had Ms. McWhorter been paying closer attention, she, too, would have simply walked around it. Ms. McWhorter views the video differently, arguing that, no matter which way she was facing, the four people in front of her obscured her ability to see the case—and that such a condition in a ballpark rotunda was entirely foreseeable. We make no comment on whose interpretation of the video was "correct" but leave that issue to the finder of fact.

"open and obvious."  After hearing argument, the trial court found in favor of Event Services.  In its Order and Judgment, the court determined that "the battery box was not concealed or hidden" and that, therefore, "the battery box was an open and obvious condition and Defendant had no duty to warn Plaintiff."  The court further found that "the placement of the battery box did not create an unsafe condition. Therefore, Defendant did not fail in [its] duty to use reasonable care in maintaining the property in a reasonably safe condition."

Following the entry of final summary judgment in Event Services' favor, Ms. McWhorter timely initiated this appeal.

II.

We recently summarized appellate review of summary judgments in *Baxter v. Morelli*, 403 So. 3d 397, 402 (Fla. 2d DCA 2025):

> We review a trial court's grant of summary judgment de novo.  *See Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).  Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a).  "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  "We view the facts in the light most favorable to [the nonmoving party] and may not weigh the evidence or make credibility determinations."  *Lassiter v. Citizens Prop. Ins.*, 386 So. 3d 646, 651 (Fla. 2d DCA 2024) (alteration in original) (quoting *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs.*, 356 So. 3d 292, 297 (Fla. 2d DCA 2023)).

There is now a "fundamental similarity between the summary judgment standard and the directed verdict standard."  *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021).  The question of whether

4

a legal duty exists in a negligence claim is an issue of law, which is also subject to our de novo review. *Weber ex rel. Est. of Weber v. Marino Parking Sys., Inc.,* 100 So. 3d 729, 730 (Fla. 2d DCA 2012).

### III.

Event Services does not dispute that it was responsible for maintaining the rotunda walkway and for the actions of its security guard employee who left the battery case on the floor. Because Ms. McWhorter's negligence claim turned on her status as a business invitee at Tropicana Field, Event Services' legal duty was two-fold. First, it had a duty to "use reasonable care in maintaining the property in a reasonably safe condition." *See Pratus v. Marzucco's Constr. & Coatings, Inc.,* 310 So. 3d 146, 149 (Fla. 2d DCA 2021) (quoting *Tallent v. Pilot Travel Ctrs., LLC,* 137 So. 3d 616, 617 (Fla. 2d DCA 2014)). Second, it bore "the duty to warn of dangers of which [it] has or should have knowledge and which are unknown to the invitee and cannot be discovered by the invitee through the exercise of reasonable care." *Id.*

Event Services' argument, both below and on appeal, centers on how open and obvious the battery case was. The rotunda had ample lighting, the box was metallic and set on a green floor, and it had been left out in the open. Having viewed the video, we do not disagree with this characterization of the summary judgment evidence. On this record, Event Services was entitled to summary judgment on the duty to warn. But, as we explain below, it failed to satisfy its summary judgment burden as to its separate duty to maintain the rotunda in a reasonably safe condition.

These two duties—the duty to warn and the duty to maintain—are distinct, and compliance with one does not always mean compliance with the other. *Pozanco v. FJB 6501, Inc.,* 346 So. 3d 120, 123–24 (Fla. 3d

DCA 2022); *see also Tallent*, 137 So. 3d at 617, 618 (discussing the "dichotomy between the duty to warn and the duty to maintain the premises in a reasonably safe condition" and explaining that "the discharge of the duty to warn does not necessarily discharge the duty to maintain the premises in a reasonably safe condition" (quoting *Knight v. Waltman*, 774 So. 2d 731, 734 (Fla. 2d DCA 2000))). Thus, "even when a hazard is open and obvious, a landowner or possessor can still be held liable for failing 'to exercise reasonable care to prevent foreseeable injury' to invitees." *Cook v. Bay Area Renaissance Festival of Largo, Inc.*, 164 So. 3d 120, 123 (Fla. 2d DCA 2015) (quoting *Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309, 1312 (Fla. 1986)).

For example, in *Miller v. Slabaugh*, 909 So. 2d 588, 588–89 (Fla. 2d DCA 2005), the plaintiff, Mr. Miller, sued the Slabaughs when he fell from a stairway that was missing a rail while he was helping them move a mattress and box spring set on the Slabaughs' property. The Slabaughs moved for summary judgment, arguing that "the absence of the railing from the stairway was an open and obvious condition for which they could not be held liable as a matter of law." *Id.* at 589. The trial court granted their motion, but our court reversed, explaining that

> [w]hile the open and obvious nature of a condition may discharge a landowner's duty to warn, it does not discharge the landowner's duty to maintain the premises in a reasonably safe condition "[i]f the landowner should anticipate that harm could occur despite the invitee's knowledge of the danger." *Knight*, 774 So. 2d at 734; *see also Green* [*v. Sch. Bd. of Pasco Cnty.*, 752 So. 2d 700, 701 (Fla. 2d DCA 2000)]; *Arauz v. Truesdell*, 698 So. 2d 872, 874 (Fla. 3d DCA 1997). "A plaintiff's knowledge of a dangerous condition does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and

6

precludes summary judgment." *Fenster v. Publix Supermarkets, Inc.,* 785 So. 2d 737, 739 (Fla. 4th DCA 2001).

In order to prevail on their motion for summary judgment based on the alleged open and obvious nature of the missing railing, the Slabaughs would have had to conclusively establish that they should not have anticipated the potential harm to Mr. Miller as a result of the missing railing, notwithstanding his knowledge of the danger. *See Knight,* 774 So. 2d at 734; G*reen,* 752 So. 2d at 702. The record does not support such a conclusion and does not demonstrate that there are no genuine issues of material fact or that the Slabaughs are entitled to judgment as a matter of law. *See* Fla. R. Civ. P. 1.510(c).

Numerous appellate decisions have reversed summary judgments on this very point. *See, e.g., Pratus,* 310 So. 3d at 150 ("Furthermore, even if the danger was open and obvious, Marzucco 'still had a duty to maintain the premises in a reasonably safe condition' if it could have anticipated the harm to Pratus as a result of the uncovered drain." (quoting *Tallent,* 137 So. 3d at 618)); *Greene v. Twistee Treat USA, LLC,* 302 So. 3d 481, 484 (Fla. 2d DCA 2020) ("Thus, even when a dangerous condition is open and obvious, the occupier of the premises is not excused from its duties to protect or warn invitees if it reasonably should anticipate that the condition poses an unreasonable risk of harm to the invitee notwithstanding the obvious nature of the condition."); *Tallent,* 137 So. 3d at 618 (holding that, despite an open and obvious diesel spill at a service station, which the plaintiff conceded he was aware of, disputed issues of fact precluded summary judgment as to whether the station had maintained the premises in a reasonably safe condition); *Skala v. Lyons Heritage Corp.,* 127 So. 3d 814, 817 (Fla. 2d DCA 2013) (reversing summary judgment entered against tile setter who had tripped in a garage cluttered with construction materials; "Under these facts, a genuine issue of material fact exists as to whether Lyons Heritage should

have anticipated that Mr. Skala would choose to encounter the obvious perils of entering the home through the garage scattered with debris because the advantages of entering the house to complete his job outweighed the risks associated with navigating the garage in that condition."); *Muurahainen v. TJX Cos.,* 397 So. 3d 205, 207 (Fla. 5th DCA 2024) ("While a customer's awareness of a dangerous condition may be fatal to a failure to warn claim, it 'does not negate a defendant's potential liability for negligently permitting the dangerous condition to exist; it simply raises the issue of comparative negligence and precludes summary judgment.' " (quoting *Trainor v. PNC Bank, N.A.,* 211 So. 3d 366, 369 (Fla. 5th DCA 2017))); *Gomez Cruz v. Wal-Mart Stores E. LP*, 268 So. 3d 796, 800 (Fla. 4th DCA 2019) ("The dangerousness of the manhole remained an issue of fact that was not conclusively determined by the record at summary judgment."); *Denson v. SM-Planters Walk Apartments*, 183 So. 3d 1048, 1050 (Fla 1st DCA 2015) ("While the fact that a danger is obvious discharges a landowner's duty to warn, it does not discharge the landowner's duty to maintain his premises." (quoting *De Cruz–Haymer v. Festival Food Mkt., Inc.,* 117 So. 3d 885, 888 (Fla. 4th DCA 2013))); *De-Cruz-Haymer*, 117 So. 3d at 889 ("Linden's testimony creates an issue of material fact regarding whether Bravo should have expected that invitees were likely to trip over a rumpled mat despite the fact the mat's existence and condition was open and obvious.").

To be sure, "some conditions are so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition" so that the condition cannot be considered unreasonably dangerous. *See Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012). However, these cases instantiate an inherent lack of dangerousness for specific kinds of property

8

conditions, and that lack of dangerousness, like so many other aspects of negligence law, turns upon foreseeability. *See, e.g., Ashcroft,* 492 So. 2d at 1312 ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge of obviousness.*" (quoting Restatement (Second) of Torts § 343A (1965))).

Here, an Event Services employee inexplicably left a metal battery case about six inches tall and fourteen inches long on the open floor in a stadium rotunda where crowds of baseball fans ordinarily walk through. Ms. McWhorter testified that she tripped over that case less than a minute after it was placed on the floor. And there was testimony that the employee apologized to Ms. McWhorter for leaving it there. Although the dangerousness of the abandoned battery case might have been open and obvious, on these facts, it cannot be said as a matter of law that it wasn't foreseeable that a stadium patron like Ms. McWhorter would nevertheless trip over it, given where it had been left. A reasonable jury could have concluded from this evidence that Event Services breached its duty to maintain the stadium rotunda in a reasonably safe condition.

IV.

Defining the contours of legal duties in premises liability cases is highly contextual and will often turn on unique constellations of facts. *Cf. Parker v. Shelmar Prop. Owner's Ass'n,* 274 So. 3d 1219, 1221 (Fla. 5th DCA 2019) ("[W]hen an injured party alleges a breach of the duty to maintain the premises in a reasonably safe condition, factual issues frequently exist 'as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition would cause injury despite the fact it was open and obvious.' "

9

(quoting *Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 578 (Fla. 5th DCA 2005))).  Such is the case here.  The summary judgment evidence before the trial court warranted summary judgment in Event Services' favor as to its duty to warn, but not its separate duty to maintain the stadium rotunda in a reasonably safe condition.  Accordingly, we affirm in part and reverse in part the trial court's summary judgment.

Affirmed in part; reversed in part; remanded.


BLACK, J., Concurs
ATKINSON, J., Concurs in result only with opinion.


ATKINSON, Judge., Concurring separately.

I concur in the result reached in the majority opinion and much of its reasoning.  I write separately to address an argument of appellee about a class of cases not mentioned in the majority opinion.  As to the duty to maintain a premises in a reasonably safe condition, the majority refers to cases in which courts have identified "some conditions" that are "so obvious and not inherently dangerous that they can be said, as a matter of law, not to constitute a dangerous condition."  *See Dampier v. Morgan Tire & Auto, LLC*, 82 So. 3d 204, 206 (Fla. 5th DCA 2012).  Such conditions "will not give rise to liability due to the failure to maintain the premises in a reasonably safe condition."  *Id.*  However, another class of cases involves conditions that "*are* dangerous, but are so open and obvious that an invitee may be reasonably expected to discover them and to protect himself."  *See id.* (emphasis added); *see also Brookie v. Winn–Dixie Stores, Inc.*, 213 So. 3d 1129, 1133 (Fla. 1st DCA 2017) ("[T]here are two types of obvious conditions that will not constitute a breach of a duty to maintain premises in a reasonably safe condition, to wit: 1) where the condition is so 'open and obvious and not inherently dangerous'; **or** 2)

10

where the condition may be dangerous, but is 'so open and obvious that an invitee may be reasonably expected to discover them to protect himself.' " (quoting *Dampier*, 82 So. 3d at 206)).  These "[o]ther conditions" are subject to a different "rule," one that "absolve[s] the landowner of liability unless the landowner should anticipate or foresee harm from the dangerous condition despite such knowledge or obviousness."  *See id.* (quoting *Dampier*, 82 So. 3d at 206).

The majority opinion's omission elides a pertinent distinction and ignores a class of dangerous conditions for which a defendant under some circumstances might nonetheless be absolved of all liability as opposed to the scenarios noted by the majority opinion in which an invitee's knowledge of, or failure to detect, an open and obviously dangerous condition merely raises the issue of comparative negligence. Such instances may very well be rare.  *Cf. Lomack v. Mowrey*, 14 So. 3d 1090, 1092 (Fla. 1st DCA 2009) ("[A]n invitee's knowledge of a danger is *normally* not a complete bar to recovery, but rather only triggers the application of comparative negligence principles." (emphasis added)). However, it must be acknowledged that the appellee in this case has referenced a possibility, supported by decisional authority, that "in some cases, a property owner may in fact comply with both duties when an open and obvious condition does not trigger a duty to warn and the condition itself does not violate a property owner's duty to maintain the premises in a reasonably safe condition."  *See Brookie*, 213 So. 3d at 1131, 1133 ("[T]he open and obvious nature of a condition may preclude a finding of a breach of either duty, as a matter of law.").  Under some such circumstances, a defendant could be entitled to summary judgment on a claim of liability for breach of the duty "to maintain the premises in a safe condition" where a "dangerous" condition "was readily avoidable,

11

had Appellant engaged in the 'ordinary use of his own senses.' " *See id.* at 1137 (quoting *Earley v. Morrison Cafeteria Co. of Orlando*, 61 So. 2d 477, 478 (Fla. 1952)). After all, there is "usual[ly] no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent that he may reasonably be expected to discover them." *See Ashcroft v. Calder Race Course, Inc.*, 492 So. 2d 1309, 1311 (Fla. 1986) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 61 (5th ed. 1984)). "Against such conditions it may normally be expected that the visitor will protect himself." *Id.* (quoting *Prosser and Keeton on the Law of Torts*, *supra*, § 61).

On the other hand, "where the occupier as a reasonable person should anticipate an unreasonable risk of harm to the invitee notwithstanding his knowledge, warning, or the obvious nature of the condition, something more in the way of precautions may be required." *Id.* (quoting *Prosser and Keeton on the Law of Torts*, *supra*, § 61). Thus, whether a landowner is absolved of liability for failure to maintain a premises in a reasonably safe condition when a danger is "*so* open and obvious that an invitee may be reasonably expected to discover [it] and to protect himself" depends on whether the landowner should nonetheless have anticipated "harm from the dangerous condition *despite* such knowledge or obviousness." *See Dampier*, 82 So. 3d at 206 (emphasis added) (first citing *Ashcroft*, 492 So. 2d at 1311; then citing *Etheredge v. Walt Disney World Co.*, 999 So. 2d 669, 672 (Fla. 5th DCA 2008); and then citing *Aguiar v. Walt Disney World Hosp.*, 920 So. 2d 1233, 1234 (Fla. 5th DCA 2006)); *see also Miller v. Slabaugh*, 909 So. 2d 588, 589 (Fla. 2d DCA 2005) ("In order to prevail on their motion for summary judgment based on the alleged open and obvious nature of the missing railing, the Slabaughs would have had to conclusively establish that they

12

should not have anticipated the potential harm to Mr. Miller as a result of the missing railing, notwithstanding his knowledge of the danger."); *Smith v. Westdale Asset Mgmt., Ltd.*, 353 So. 3d 108, 111 (Fla. 1st DCA 2022) ("[I]t is neither 'probable nor foreseeable' that someone familiar with a known potentially dangerous condition would disregard it and fail to protect oneself." (quoting *Brookie*, 213 So. 3d at 1132–34)); *Brookie*, 213 So. 3d at 1135 ("The ultimate question is 'whether the owner or possessor should have anticipated that the dangerous condition would cause injury despite the fact that it was open and obvious.' " (quoting *Moultrie v. Consol. Stores Int'l Corp.*, 764 So. 2d 637, 640 (Fla. 1st DCA 2000))); *cf. Collias v. Gateway Acad. of Walton Cnty., Inc.* 313 So. 3d 163, 167 (Fla. 1st DCA 2021) ("It is only when the risk of harm is so 'open and obvious' that 'no reasonable person would injure himself' under the circumstances that the duty to warn and the duty to make premises safe are simultaneously met." (quoting *Brookie*, 213 So. 3d at 1136)).

On that question, Event Services was not entitled to summary judgment in this case. Ms. McWhorter did not admit, nor does the evidence indicate, that she became aware of the dangerous condition prior to tripping over it. *Cf. Brookie*, 213 So. 3d at 1134 ("Appellant's action of walking right into the pallet, not an inherently dangerous condition and one that he had previously and contemporaneously observed twice before, was the sole proximate cause of his injuries. It is neither 'probable nor foreseeable' that someone seeing a pallet on the ground, and having passed by it twice before, would fail to avoid the open and obvious condition."). And, as illustrated by the majority opinion's recounting of the pertinent facts, the summary judgment evidence did not foreclose a dispute of fact on the question of whether the condition and its dangerousness were "so open and obvious" that Ms. McWhorter

13

should have been "expected to discover it," *see Dampier*, 82 So. 3d at 206, and avoid it through the "ordinary" exercise of her "senses," *see Brookie*, 213 So. 3d at 1134 (quoting *Earley*, 61 So. 2d at 478). Despite its low profile, the battery case might have stood out conspicuously in an empty atrium, given the contrast of its color to that of the floor. But Ms. McWhorter's path was intersected by several other individuals before it ultimately led to the battery case that was left in a populated public space in which a ballpark attendee might reasonably be expected to have her eyes elsewhere than the floor. Thus, the summary judgment evidence is such that even if a reasonable jury were to find that the battery case and its dangerousness were open and obvious, such a jury could also find that the circumstances were such that Event Services should have anticipated that leaving a short but heavy object on the floor of the atrium could pose a risk of harm to an invitee "despite such . . . obviousness." *See Dampier*, 82 So. 3d at 206.

––––––––––––––––––––––––

Opinion subject to revision prior to official publication.