877 So.2d 886 (2004)
Patricia McGRAW, Appellant,
v.
R AND R INVESTMENTS, LTD., Appellee.
No. 1D03-5032.
District Court of Appeal of Florida, First District.
July 20, 2004.
*887 W. Dexter Douglass and Thomas Crapps of Douglass Law Firm, P.A., Tallahassee, and Gillis E. Powell, Jr., of Powell, Powell & Powell, Crestview, for Appellant.
Bobby L. Whitney, Jr., of Seymour & Whitney, Fort Walton Beach, for Appellee.
*888 ERVIN, J.
This is an appeal from a final summary judgment finding appellee, R and R Investments, Ltd. (R & R), an equine activity sponsor, not liable for injuries suffered by appellant, Patricia McGraw, an equine trainer employed by R & R, after she was thrown by a horse which R & R owned, by reason of the immunity afforded to equine sponsors by section 773.02, Florida Statutes (2000). McGraw asserts that because R & R failed to comply with the notice provisions of section 773.04, Florida Statutes (2000), requiring all such sponsors to post warnings of their nonliability for injuries or death resulting from the inherent risks of equine activities, the trial court erred in holding that the immunity provided therein applied to bar the action. We agree, and reverse and remand with directions.
This is a case of first impression. In that this is an appeal from the entry of summary judgment which involves a pure question of law, our review standard is de novo. See Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla.2001). In reaching its decision, the lower court concluded that no provision therein "conditions the protection of the statute upon compliance with section 773.04 [the posting requirements], and the fact that the defendant failed to comply with [it] is of no effect." McGraw claims that if the trial court had correctly construed all pertinent provisions of chapter 773 in pari materia, it should have been obvious that a reasonably prudent person would not have failed to post the notice demanded by section 773.04; therefore, the court erred in its construction, requiring reversal of the summary judgment. R & R responds, arguing that because the only exceptions to the broad grant of immunity given equine activity sponsors from liability for injuries suffered by participants while engaging in inherent risks of equine activities are found solely in section 773.03, Florida Statutes (2002), and, because the statutory duty to warn of the sponsor's nonliability is otherwise provided in section 773.04, the breach of such duty, if it occurred, does not meet any of the narrow categories of exceptions set out under section 773.03.
A proper resolution of the issue requires a careful examination of sections 773.02, 773.03, and 773.04.
Section 773.02 provides:
General provisions.  Except as provided in s. 773.03, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant nor any participant's representative shall have any claim against or recover from any equine activity sponsor, equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
(Emphasis added.) It is undisputed that R & R is an "equine activity sponsor"[1] and McGraw a "participant"[2] under the facts of this case. Moreover, there is no disagreement that McGraw's injuries were the result of "an inherent risk of an equine activity," defined in part in section 773.01(6), Florida States (2002), as "those *889 dangers or conditions which are an integral part of equine activities."[3]
In that section 773.02 explicitly refers only to the limitations from liability as provided in section 773.03, we must carefully examine the exceptions expressed therein to determine whether they reasonably permit an in pari materia construction with provisions not included. Section 773.02(2) provides:
(2) Nothing in s. 773.02 shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor, equine professional, or person:
(a) Provided the equipment or tack, and knew or should have known that the equipment or tack was faulty, and it was so faulty as to be totally or partially responsible for the injury;
(b) Provided the equine and failed to make reasonable and prudent efforts to determine the ability of the participant to engage safely in the equine activity, or to determine the ability of the participant to safely manage the particular equine based on the participant's representation of his or her ability;
(c) Owns, leases, rents, has authorized use of, or is otherwise in lawful possession and control of the land or facilities upon which the participant was injured, and the injury was due totally or in part, to a dangerous latent condition which was known to the equine activity sponsor, equine professional, or person and failed to post warning signs;
(d) Commits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances or that constitutes willful or wanton disregard for the safety of the participant, which act or omission was a proximate cause of the injury; or
(e) Intentionally injures the participant.
(Emphasis added.)
Section 773.04 provides in full:
Posting and notification. 
(1) Every equine activity sponsor and equine professional shall:
(a) Post and maintain one or more signs which contain the warning notice specified in subsection (2). These signs shall be placed in a clearly visible location near to where the equine activity begins. The warning notice specified in subsection (2) shall appear on the sign in black letters, with each letter to be a minimum of 1 inch in height, with sufficient color contrast to be clearly distinguishable.
(b) Give the participant a written document which the participant shall sign with the warning notice specified in subsection (2) clearly printed on it. Said written document may be used in lieu of posting the warning on the site of the equine activity sponsor's or equine professional's facility, and shall be given to any participant in an equine event not on the location of the equine activity sponsor's or equine professional's facility.
(2) The signs and document described in subsection (1) shall contain the following warning notice:
WARNING
Under Florida law, an equine activity sponsor or equine professional is not *890 liable for an injury to, or the death of, a participant in equine activities resulting from the inherent risks of equine activities.
Nothing in section 773.04, or elsewhere in chapter 773, expressly provides a consequence attending a sponsor's neglect for not posting the warning there required. Thus, despite the mandatory language, "shall," directing that signs be prominently displayed warning all persons of a sponsor's nonliability for injuries resulting from the inherent risk of equine activities, the legislature failed to state what sanction should attach to such omission. Although it is a general rule that courts will not ordinarily imply exceptions to the provisions of a statute, such exceptions may be supplied where they are necessary to give effect to the legislative intent. See 73 Am.Jur.2d Statutes § 213 (2001). For example, in the interest of justice, proof of fraudulent concealment may constitute an implied exception to the statute of limitations, thereby tolling the running of the statute until discovery or reasonable opportunity of discovery of the concealment by the owner of the cause of action. See Nardone v. Reynolds, 333 So.2d 25, 39 (Fla.1976), modified on other grounds, Tanner v. Hartog, 618 So.2d 177 (Fla.1993); S.A.P. v. Dep't of Health & Rehab. Servs., 704 So.2d 583, 585 (Fla. 1st DCA 1997).
In resolving the question of whether the legislature reasonably intended to exclude from the ambit of protection an equine owner that had not posted the required warning, it is necessary for us to consider certain pertinent maxims of statutory construction.
We note that before the enactment of chapter 773, effective May 5, 1993, chapter 93-169, section 93, Laws of Florida, the common law permitted an injured equine rider to bring an action against an equine owner upon a showing that the horse had a propensity to do the act that caused the injury, and the owner knew of such propensity. See 4 Am.Jur.2d Animals § 115 (1995); Deese v. White Belt Dairy Farms, Inc., 160 So.2d 543 (Fla. 2d DCA 1964). The rule is well-established that statutes in derogation of common law, such as those provided in chapter 773, must be strictly construed, and if any doubt exists as to the legislature's intent, the doubt should be interpreted in favor of the injured party. See State ex. rel. Grady v. Coleman, 133 Fla. 400, 183 So. 25 (1938).
Another rule of statutory construction, particularly applicable to the case at bar, is that statutes relating to the same subject matter should be read in pari materia, and such rule is particularly applicable where such statutes are enacted as part of a single act. Major v. State, 180 So.2d 335 (Fla.1965). By reading all three statutes of chapter 773 in pari materia, we conclude that the consequence not stated by the legislature for the failure of an equine owner to comply with the posting requirements of section 773.04 is supplied by conjoining the provisions therein with the exceptions enumerated in section 773.03. Thus, the omission of the equine sponsor in not posting the sign required in section 773.04 is one "that a reasonably prudent person would not have done or omitted under the same or similar circumstances." § 773.03(2)(d), Fla. Stat (2002). In our judgment, such construction is consistent with the legislative intent, although not expressly stated, that the failure to post such warning disqualifies the sponsor from the protections afforded by section 773.02. Our conclusion in this regard is supported, we believe, by the legislative staff notes explaining the purposes leading to the enactment of chapter 773, which are, in pertinent part:

*891 This amendment would create a complete bar to recovery for an equine activity participant except when law would expressly place specific responsibilities on an equine owner or sponsor. In effect, the provisions of the amendment would bring back the affirmative defense of assumption of risk for equine owners or sponsors unless a specified responsibility has been breached. When such responsibility is breached, the comparative negligence standard would apply.
The owner or sponsor would be specifically responsible to: (1) provide functional tack; (2) make a reasonable effort to determine the ability of the participant to engage safely in the equine activity, such a determination could be based upon the participant's representation of their ability; (3) post warning signs of all dangerous, latent conditions known to the equine owner or sponsor; (4) act as a reasonably prudent person would act under the circumstances; (5) disclose what a reasonable prudent person would disclose under the circumstances; and (6) refrain from intentionally injuring the participant.
The equine professional or sponsor would be required to post a sign warning participants of their limited liability, or to give participants a written document stating the warning. The warning language would be expressly provided by law.
Fla. S. Comm. on Agric., CS/SB 1658 (1993) Staff Analysis 5-6 (Mar. 24, 1993) (Fla. State Archives, Dep't of State) (emphasis added).
The staff's explanation that the effect of the statutory amendments was to restore the defense of assumption of risk unless a specific responsibility had been breached by equine owners or sponsors is particularly helpful regarding the extent of the immunity provided. We must presume that in making such comments, the legislature understood that only the affirmative defense of implied assumption of risk is now subsumed within the doctrine of comparative negligence. See Blackburn v. Dorta, 348 So.2d 287, 293 (Fla.1977). In contrast to implied assumption of risk, one who expressly assumes a risk may be completely barred from any right of recovery. The court in Dorta explains:
Included within the definition of express assumption of risk are express contracts not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence as well as situations in which actual consent exists such as where one voluntarily participates in a contact sport.
Id. at 290. Actual consent requires actual knowledge of the risk assumed by the injured party. As pointed out in Van Tuyn v. Zurich American Insurance Co., 447 So.2d 318 (Fla. 4th DCA 1984):
Preliminary to any finding of express assumption of risk is a showing that the particular risk was known or should have been known and appreciated by the person injured.
For express assumption of risk to be valid, either by contract or by voluntary participation in an activity, it must be clear that the plaintiff understood that she was assuming the particular conduct by the defendants which caused her injury. No agreement to assume unknown risks shall be inferred.
Id. at 320-21 (emphasis added) (citations omitted).
It appears reasonably clear to us from our reading of the committee's comments that the legislature's restoration of the affirmative defense of assumption of risk for equine owners or sponsors referred only to express assumption of risk, meaning that unless the plaintiff actually knows or fully understands the nature of the risk, the *892 risk assumed would be, as the current state of the law requires, only implied. In the absence of a participant's full appreciation that he or she is undertaking the risk of the sponsor's nonliability for any injuries, we can only conclude that the committee's reference to "assumption of risk" as a bar to one's recovery of damage pertained exclusively to express assumption of risks, and if the participant did not have actual knowledge of this risk, the legislature instead intended that the risk be implied, and, therefore, the statutory bar was inapplicable.
If such construction were not placed on the statute, the interpretation given by the trial court would effectively immunize owners or sponsors from any liability associated with the inherent risks of such activities without any effective enforcement of the legislative demand that they comply with their statutory duty to warn of their nonliability for any injuries ensuing from such activities. The rule is well-established that the courts will not ascribe to the legislature an intent to create an absurd or harsh consequence; therefore, an interpretation avoiding such consequence is always preferred. City of St. Petersburg v. Siebold, 48 So.2d 291 (Fla.1950).
As stated, the legislature has used mandatory language directing sponsors to post notices to the public warning of their nonliability for such injuries. Clearly, a mandatory, not a directory, interpretation of the word "shall" is required. As was observed in Allied Fidelity Insurance Co. v. State, 415 So.2d 109 (Fla. 3d DCA 1982):
Whether "shall" is mandatory or discretionary will depend, then, upon the context in which it is used and the legislative intent expressed in the statute. Thus, for example, where "shall" refers to some required action preceding a possible deprivation of a substantive right, or the imposition of a legislatively-intended penalty, or action to be taken for the public benefit, it is held to be mandatory.
Because an equine participant's common law right of action is affected by the enactment of chapter 773, we cannot believe that the legislature would cavalierly abrogate an injured person's substantive right to seek redress in the courts without requiring as well an owner or sponsor in some meaningful way to comply with the posting provisions of section 773.04. In so concluding, we find the following comments by Professor Terence Centner particularly useful:
Another issue involves the consequences if an equine professional or activity sponsor fails to comply with the statutory notice provisions. Several statutes provide that failure to comply with the notice requirements disqualifies the professional or sponsor from invoking the immunity provided by the statute. Thus, it is clear that persons failing to meet this statutory requirement cannot seek solace in the statute's benefits. Some statutes, however, fail to specify the consequences of not meeting this mandatory requirement. Possibly, the failure to meet the notice requirement also would disqualify persons from the immunity provided by these statutes.159
* * *
159 In the absence of language directly stating that failure to provide the required warning notice disqualifies a person from statutory immunity, several rules of statutory construction may assist in determining what happens to persons who do not meet the warning requirement. Perhaps the first issue is whether the statutory directives are directory or mandatory. Norman J. Singer, Statutes and Statutory Construction § 57.10 (5th ed.1992). The statutes generally use the *893 mandatory "shall" for prescribing the sign requirements.
Making the requirement of notice signs mandatory, however, would be counter to a mandatory grant of immunity. See supra notes 95-98 and accompanying text. Thus, these mandatory notice and immunity provisions are in opposition and may not offer much assistance in interpreting the meaning of the notice requirement. By declining to state the results of a failure to meet the statutory notice requirement, the legislative body may have intended a directory construction for the notice requirement. Singer, supra, § 57.03.
Another rule of statutory construction involves derogation of the common law, which may grant a plaintiff certain rights. Id. § 61.01. Since the equine liability statutes diminish common law causes of action, the violation of the notice requirement may be intended to be mandatory and disqualify persons from the statutory grant of immunity. Id. In opposition to this determination, however, is a rule of statutory construction that the provisions of remedial statutes should be construed as directory. Id. § 57.12.
Of course, the legislative intent is paramount. Id. § 57.02. Legislatures intended the equine liability statutes to narrow the liability of sponsors, professionals and others, yet the command of the statutes generally is couched as "limiting the civil liability of those involved in [equine] activities." Tenn.Code Ann. § 44-20-101 (1993). If the statutes only limit civil liability, a mandatory interpretation of the notice requirement, whereby failure to provide the required warning notice disqualifies the defendant from statutory immunity, does not obstruct the enumerated statutory purpose. Singer, supra § 57.02. Moreover, if a defendant's statutory immunity rights are premised on defendant's compliance with the notice requirement, the defendant controls qualification for the statutory rights. This supports a mandatory construction of the notice requirement. Id. § 57.15.
Terence J. Centner, "The New Equine Liability Statutes," 62 Tenn. L.Rev. 997, 1016-17 & n. 159 (1995) (emphasis added).
Section 773.02 is a statute only limiting an equine sponsor's civil liability; therefore, the construction we have placed on the statute is, in our judgment, consistent with the legislative purpose to furnish immunity to a sponsor from liability for injuries resulting from inherent risks of equine activities in circumstances where a participant is fully aware of the sponsor's nonliability for any injury incurred by the participant in such activities. Because, for the reasons stated, the provisions of chapter 773 are inapplicable to McGraw's common law action for damages, the final summary judgment is REVERSED and the case is REMANDED for further consistent proceedings.
ALLEN and HAWKES, JJ., concur.
NOTES
[1] Defined in part as one, whether or not operating for profit or nonprofit, "which sponsors, organizes, or provides the facilities for an equine activity." § 773.01(4), Fla. Stat. (2002).
[2] Defined in part as an amateur or a professional who engages in an equine activity. § 773.01(7), Fla. Stat. (2002).
[3] Among other things, inherent risks of equine activities include the equine's propensity to behave in certain ways, or its unpredictability in reacting to particular conditions, thereby resulting in injuries to persons on or around them. § 773.01(6)(a), Fla. Stat. (2002).