44 So.3d 253 (2010)
Myles McNICHOL, Appellant,
v.
SOUTH FLORIDA TROTTING CENTER, INC., Appellee.
No. 4D09-1663.
District Court of Appeal of Florida, Fourth District.
October 6, 2010.
*254 Timothy H. Crutchfield, Miami, for appellant.
Sammy Lanier and Lisa C. Davidson of Lanier Davidson LLC, St. Augustine, for appellee.
GATES, MICHAEL, L., Associate Judge.
This is an appeal from the trial court's order granting a directed verdict finding the defendant, South Florida Trotting Center, Inc., an equine sponsor, not liable for injuries suffered by plaintiff, Myles McNichol, in a horse related accident by reason of the immunity afforded to equine sponsors by section 773.02, Florida Statutes and assumption of the risk. Plaintiff contends the trial court erred in ignoring the negligence exception provided in section 773.03, Florida Statutes, which raises issues of fact. We agree and reverse.
The defendant's training track was used to train horses for harness racing. In August and September 2004, the track was impacted by a series of tropical storms and a hurricane. After the storms, defendant used a road grader to push dirt from the track into the inside apron, creating a large mound of dirt (approximately 2-2½ feet tall) around the entire inside of the track. The dirt mound remained for some period of time. The plaintiff was injured when the horse he was training reacted to the sight or sound of a vehicle adjacent to the track. The horse bolted across the *255 track and ran into the dirt mound causing plaintiff to be ejected from his jog cart and injured.
The plaintiff filed an action against the defendant, alleging it breached its duty of care and was negligent by allowing the dirt mound to be placed on the inside edge of the track. The defendant responded that section 773.02 provided it with absolute immunity for injuries resulting from the inherent risks of equine activities. Plaintiff contended section 773.03(2)(d) provides an exception to an equine activity sponsors immunity when the sponsor "[c]ommits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances...."
The evidence at trial indicated the presence of the dirt mound was not a normal condition for training tracks, and that the dirt mound was a hazard not associated with training horses. The owner of the Trotting Center testified there was no legitimate purpose in maintaining the dirt mound around the inside perimeter of the track. The plaintiff testified that he could not regain control of the horse because the dirt mound blocked access to a grass infield, which was a safe place to go to when a horse was out of control. The general manager of the Trotting Center also testified that it was not reasonably prudent to maintain the mound on the inside of the track for any extended period of time.
At the conclusion of plaintiff's case, defendant moved for a directed verdict alleging plaintiff failed to establish a prima facie case of negligence. The plaintiff argued issues of fact had been raised pertaining to the negligence exception contained in section 773.03 which should be determined by the jury. The trial court, relying on section 773.02, found defendant as an equine sponsor was not liable for plaintiff's injuries because the injuries resulted from the inherent risk of equine activities. Alternatively, the trial court found the plaintiff assumed the risk of an open and obvious condition. The trial court granted the directed verdict.
"A motion for directed verdict should be granted only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact and that the movant is entitled to judgment as a matter of law." Brown v. Kaufman, 792 So.2d 502, 503 (Fla. 4th DCA 2001). If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper. Id. In negligence cases, courts caution against a motion for a directed verdict. Regency Lake Apartments Assocs., Ltd. v. French, 590 So.2d 970, 972 (Fla. 1st DCA 1991).
Section 773.01(6) defines "Inherent risks of equine activities" as:
[T]hose dangers or conditions which are an integral part of equine activities, including, but not limited to:
(a) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them.
(b) The unpredictability of an equine's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals.
(c) Certain hazards such as surface and subsurface conditions.
(d) Collisions with other equines or objects.
(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.
(Emphasis added).
Section 773.02 provides that:

*256 Except as provided in s. 773.03, an equine activity sponsor, an equine professional, or any other person, which shall include a corporation or partnership, shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant nor any participant's representative shall have any claim against or recover from any equine activity sponsor, equine professional, or any other person for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
(Emphasis added).
The jury was presented with evidence that the defendant created a two-foot mound that blocked access from the track to a grass infield. The grass infield was used as a safe spot for trainers to go to when a horse was out of control. The presence of the dirt mound was not a normal condition for training tracks, and the dirt mound was a hazard not associated with training horses. The plaintiff testified that he would never expect to see this type of dirt mound on a training track. From the evidence presented, the jury could have found the dirt mound was not an integral part of the race track or training horses and therefore not an inherent risk of equine activities. Thus, when viewing "the evidence and all inferences of fact in a light most favorable to the nonmoving party," there was evidence to support a verdict in favor of the plaintiff that the placement of the dirt mound was not an inherent risk of equine activities as defined by section 773.01(6). See e.g. LeNoble v. City of Fort Lauderdale, 663 So.2d 1351, 1352 (Fla. 4th DCA 1995) (stating that the jury must determine whether the placement of a pitching rubber is a risk inherent in the game of fast pitch softball).
Because evidence was presented at trial to establish that this mound was a hazard not associated with training horses, the issue of whether the mound was an inherent risk should have been presented to the jury. See e.g. Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1311 (Fla. 1986) (holding that riding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing).
Additionally, Section 773.03 provides:
(2) Nothing in s. 773.02 shall prevent or limit the liability of an equine activity sponsor, an equine professional, or any other person if the equine activity sponsor, equine professional, or person:
....
(d) Commits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances or that constitutes willful or wanton disregard for the safety of the participant, which act or omission was a proximate cause of the injury.
The Trotting Center's owner and general manager testified that the mound was a hazard, that it created a dangerous condition, and that it was not good custom and practice to leave the mound in place for any extended period of time. The general manager further testified that it was not reasonably prudent to maintain the mound on the inside of the track for any extended period of time. There is no immunity for equine activity when the claim is based on "an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances." § 773.03(2)(d).
The jury could have found from the evidence presented that the negligence exception applied if it determined that the defendant had a specific responsibility to act as a reasonably prudent person by removing the mound. See e.g. McGraw v. *257 R & R Invs., Ltd., 877 So.2d 886, 890 (Fla. 1st DCA 2004) (finding that the omission of an equine sponsor in not posting a sign required in section 773.04 is one that a "`reasonably prudent person would not have done or omitted under the same or similar circumstances.'") (quoting section 773.03(2)(d)).
Finally, the trial court found plaintiff's claim was barred because he expressly assumed the risk of injury. The doctrine of express assumption of the risk totally bars recovery when the injured party consented to a known risk. See Kuehner v. Green, 436 So.2d 78 (Fla.1983); see also Van Tuyn v. Zurich Am. Ins. Co., 447 So.2d 318, 320 (Fla. 4th DCA 1984). Express assumption of the risk includes "express contracts not to sue for injury ... as well as ... where one voluntarily participates in a contact sport." Blackburn v. Dorta, 348 So.2d 287, 290 (Fla.1977).
In contrast, implied assumption of the risk includes aberrant conduct in noncontact sports and may not be invoked as a total bar to recovery. Mazzeo v. City of Sebastian, 550 So.2d 1113, 1116-17 (Fla. 1989); see also Kendrick v. Ed's Beach Serv., Inc., 577 So.2d 936, 938 (Fla.1991).
In this case, the plaintiff's conduct is properly characterized as implied assumption of the risk. As such, the plaintiff's conduct must be evaluated by the jury under principles of comparative negligence. See Kendrick, 577 So.2d at 938 (holding that a diver who was injured when he dove into a swimming pool could recover from the defendant, even if he intentionally assumed the risk despite knowing of the dangerous conditions); Mazzeo, 550 So.2d at 1117 (holding that a swimmer's "foolhardy" conduct of diving into shallow water was implied assumption of the risk and would have to be evaluated under principles of comparative negligence).
Even if harness racing is a contact sport, the defense of express assumption of the risk only bars recovery for those risks inherent in the contact sport itself. See Ashcroft, 492 So.2d at 1311 (holding that there was no express assumption of the risk because "[r]iding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing"). Here, the jury should have been able to determine whether the placement of the mound was an inherent risk of equine activity.
Reversed and Remanded.
POLEN, J., concurs.
MAY, J., dissents with opinion.
MAY, J., dissenting.
I respectfully dissent. The trial court correctly directed a verdict for the defendant based on both the statutory immunity of section 773.02, Florida Statutes (2004) and the plaintiff's express assumption of risk due to the open and obvious nature of the dirt mounds inside the track. I would affirm.
The plaintiff was an equine professional. He worked as a trainer at the defendant's track. The defendant was an "equine activity sponsor." The plaintiff sustained his injury when the horse he was training spooked at a truck. The horse ran across the training track and into a mound of dirt and debris, which had been deposited inside the track following a 2004 hurricane. The plaintiff sustained an ankle injury as a result of the collision.
The plaintiff admitted that inherent risks of training a horse include a horse's propensity for running into things. Two other trainers testified that horses run into all kinds of things, including water trucks, tractors, jog carts, trees, fences, and other trainers and things, all of which are inherent risks of the profession. The plaintiff *258 also admitted that yearlings, such as the horse in question, are unpredictable.
Section 773.02 provides in part:
Except as provided in s. 773.03, an equine activity sponsor ... shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant ... shall have any claim against or recover from any equine activity sponsor ... for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
§ 773.02, Fla. Stat. (2004).
"Inherent risks of equine activities" are defined as:
[T]hose dangers or conditions which are an integral part of equine activities, including, but not limited to:
(a) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them.
(b) The unpredictability of an equine's reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals.
(c) Certain hazards such as surface and subsurface conditions.
(d) Collisions with other equines or objects.
(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.
§ 773.01(6), Fla. Stat. (2004). The facts of this case uniquely satisfy all but one of the inherent risks identified in the statute. I cannot in good conscience find a reason to deviate from the immunity provided by this statute.
The plaintiff relies upon the negligence exception found in section 773.03(2)(d) in an attempt to avoid the immunity found in section 773.02, Florida Statutes (2004). That exception provides that:
Nothing in s. 773.02 shall prevent or limit the liability of an equine activity sponsor ... if the equine activity sponsor:... [c]ommits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances or that constitutes willful or wanton disregard for the safety of the participant, which act or omission was a proximate cause of the injury....
§ 773.03(2)(d), Fla. Stat. (2004). Read in its broadest sense and out of context, the exception appears to exempt ordinary negligence from the very immunity provided by section 773.02. And, it is with this reading the majority reverses the directed verdict.
When read in context with section 773.02, however, and with the goal of giving meaning to all provisions of the equine immunity law, the exception takes on a more limited form. Section 773.02 provides immunity to the defendant "for an injury to or the death of a participant resulting from the inherent risks of equine activities...." By reading section 773.03 in pari materia, it exempts from section 773.02's immunity, negligent acts or omissions and willful or wanton conduct that do not fall within the defined "inherent risks of equine activities." An example of a negligent act or omission that would fall under the exception might be an equine professional who mixed fertilizer with the feed and caused the horse to be sick and collapse during a ride, injuring the rider. This mix-up in the food is not an inherent risk, and the equine professional's negligence would not be immune under section 773.02.
The defendant argues that allowing the negligence exception to trump the immunity *259 provision eliminates the very immunity provided by the statute, but claims that the terms "willful and wanton" in section 773.03(2)(d) only modify and limit the words "act or omission." Reading the wording of the exception, I cannot agree with that reasoning, but reach the same conclusion for the reason stated above. The exception was never meant to include negligence when the activity is enumerated as one of the inherent risks of equine activities. The exception simply cannot mean that all simple acts of negligence negate the immunity provided by the statute for inherent risks of equine activity. If read in that manner, the statute and its immunity are rendered meaningless.[1]
I also agree with the trial court's finding that the open and obvious nature of the dirt mounds negated any legal duty on the part of the defendant. Under the doctrine of express assumption of the risk, recovery is barred when an injured party engages in a professional sporting activity and the party consents to those commonly appreciated risks which are inherent in the activity itself. See Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1311 (Fla. 1986); Ashcroft v. Calder Race Course, Inc., 464 So.2d 1250, 1251 (Fla. 3d DCA 1985) (finding that the "Blackburn court clearly contemplated other professional sporting activity when it used the term `such as' when defining those cases in which actual consent exists and the express-assumption-of-risk defense is available"), rev'd on other grounds, 492 So.2d 1309 (Fla.1986);[2]see also Tilson v. Russo, 30 A.D.3d 856, 818 N.Y.S.2d 311 (N.Y.App. Div.2006) (applying the defense of assumption of the risk to the recreational sporting activity of horseback riding). Here, the plaintiff was engaged in professional horse racing activity and admitted that inherent risks of training a horse include a horse's propensity to collide with other objects.
Furthermore, the plaintiff understood the nature of the risk involved. As the First District Court of Appeal explained in McGraw v. R & R Investments, Ltd., 877 So.2d 886 (Fla. 1st DCA 2004)[3]:
It appears reasonably clear to us from our reading of the committee's comments that the legislature's restoration of the affirmative defense of assumption of risk for equine owners or sponsors referred only to express assumption of risk, meaning that unless the plaintiff actually knows or fully understands the nature of the risk, the risk assumed would be, as the current state of the law requires, only implied. In the absence of a participant's full appreciation that he or she is undertaking the risk of the sponsor's nonliability for any injuries, we can only conclude that the committee's reference to "assumption of risk" as a bar to one's recovery of damage pertained exclusively to express assumption of risks, and if the participant did not have actual knowledge of this risk, *260 the legislature instead intended that the risk be implied, and therefore, the statutory bar was inapplicable.
Id. at 891-92.
Here, the plaintiff admitted that the location of the dirt mound was open and obvious to him and testified that the condition on the track was "an accident looking to happen...." This renders his assumption of that risk express, not implied. As such, the trial court correctly directed a verdict for the defendant on this alternative ground. See Tilson v. Russo, 30 A.D.3d 856, 818 N.Y.S.2d 311 (N.Y.App. Div.2006) (summary judgment entered against experienced recreational horseback rider when the participant was injured due to the sudden and unintended action of the horse, which was a risk inherent in the sport of horseback riding and known to the participant).
I therefore respectfully dissent. I would affirm.
NOTES
[1] The rule is well-established that "[t]he courts will not ascribe to the Legislature an intent to create absurd or harsh consequences, and so an interpretation avoiding absurdity is always preferred." City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla. 1950).
[2] Although the Florida Supreme Court in Ashcroft reversed the Third District Court of Appeal by finding that there was no express assumption of risk because "[r]iding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing," this decision pre-dated the enactment of chapter 773, effective May 5, 1993. Ashcroft, 492 So.2d at 1311.
[3] In McGraw, the First District held that equine immunity under section 773.02 did not apply because the defendant had failed to comply with the statutory mandate to post and maintain a specific warning notice as required by section 773.04, Florida Statutes (2004). McGraw, 877 So.2d at 890.