MAY, J.,
dissenting.
I respectfully dissent. The trial court correctly directed a verdict for the defendant based on both the statutory immunity of section 773.02, Florida Statutes (2004) and the plaintiffs express assumption of risk due to the open and obvious nature of the dirt mounds inside the track. I would affirm.
The plaintiff was an equine professional. He worked as a trainer at the defendant’s track. The defendant was an “equine activity sponsor.” The plaintiff sustained his injury when the horse he was training spooked at a truck. The horse ran across the training track and into a mound of dirt and debris, which had been deposited inside the track following a 2004 hurricane. The plaintiff sustained an ankle injury as a result of the collision.
The plaintiff admitted that inherent risks of training a horse include a horse’s propensity for running into things. Two other trainers testified that horses run into all kinds of things, including water trucks, tractors, jog carts, trees, fences, and other trainers and things, all of which are inherent risks of the profession. The plaintiff *258 also admitted that yearlings, such as the horse in question, are unpredictable.
Section 773.02 provides in part:
Except as provided in s. 773.03, an equine activity sponsor ... shall not be liable for an injury to or the death of a participant resulting from the inherent risks of equine activities and, except as provided in s. 773.03, no participant ... shall have any claim against or recover from any equine activity sponsor ... for injury, loss, damage, or death of the participant resulting from any of the inherent risks of equine activities.
§ 773.02, Fla. Stat. (2004).
“Inherent risks of equine activities” are defined as:
[Tjhose dangers or conditions which are an integral part of equine activities, including, but not limited to:
(a) The propensity of equines to behave in ways that may result in injury, harm, or death to persons on or around them.
(b) The unpredictability of an equine’s reaction to such things as sounds, sudden movement, and unfamiliar objects, persons, or other animals.
(c) Certain hazards such as surface and subsurface conditions.
(d) Collisions with other equines or objects.
(e) The potential of a participant to act in a negligent manner that may contribute to injury to the participant or others, such as failing to maintain control over the animal or not acting within his or her ability.
§ 773.01(6), Fla. Stat. (2004). The facts of this case uniquely satisfy all but one of the inherent risks identified in the statute. I cannot in good conscience find a reason to deviate from the immunity provided by this statute.
The plaintiff relies upon the negligence exception found in section 773.03(2)(d) in an attempt to avoid the immunity found in section 773.02, Florida Statutes (2004). That exception provides that:
Nothing in s. 773.02 shall prevent or limit the liability of an equine activity sponsor ... if the equine activity sponsor: ... [cjommits an act or omission that a reasonably prudent person would not have done or omitted under the same or similar circumstances or that constitutes willful or wanton disregard for the safety of the participant, which act or omission was a proximate cause of the injury....
§ 773.03(2)(d), Fla. Stat. (2004). Read in its broadest sense and out of context, the exception appears to exempt ordinary negligence from the very immunity provided by section 773.02. And, it is with this reading the majority reverses the directed verdict.
When read in context with section 773.02, however, and with the goal of giving meaning to all provisions of the equine immunity law, the exception takes on a more limited form. Section 773.02 provides immunity to the defendant “for an injury to or the death of a participant resulting from the inherent risks of equine activities....” By reading section 773.03 in pari materia, it exempts from section 773.02’s immunity, negligent acts or omissions and willful or wanton conduct that do not fall within the defined “inherent risks of equine activities.” An example of a negligent act or omission that would fall under the exception might be an equine professional who mixed fertilizer with the feed and caused the horse to be sick and collapse during a ride, injuring the rider. This mix-up in the food is not an inherent risk, and the equine professional’s negligence would not be immune under section 773.02.
The defendant argues that allowing the negligence exception to trump the immuni *259 ty provision eliminates the very immunity provided by the statute, but claims that the terms “willful and wanton” in section 773.03(2)(d) only modify and limit the words “act or omission.” Reading the wording of the exception, I cannot agree with that reasoning, but reach the same conclusion for the reason stated above. The exception was never meant to include negligence when the activity is enumerated as one of the inherent risks of equine activities. The exception simply cannot mean that all simple acts of negligence negate the immunity provided by the statute for inherent risks of equine activity. If read in that manner, the statute and its immunity are rendered meaningless.[1]
I also agree with the trial court’s finding that the open and obvious nature of the dirt mounds negated any legal duty on the part of the defendant. Under the doctrine of express assumption of the risk, recovery is barred when an injured party engages in a professional sporting activity and the party consents to those commonly appreciated risks which are inherent in the activity itself. See Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309, 1311 (Fla. 1986); Ashcroft v. Calder Race Course, Inc., 464 So.2d 1250, 1251 (Fla. 3d DCA 1985) (finding that the “Blackburn court clearly contemplated other professional sporting activity when it used the term ‘such as’ when defining those cases in which actual consent exists and the express-assumption-of-risk defense is available”), rev’d on other grounds, 492 So.2d 1309 (Fla.1986);[2] see also Tilson v. Russo, 30 A.D.3d 856, 818 N.Y.S.2d 311 (N.Y.App.Div.2006) (applying the defense of assumption of the risk to the recreational sporting activity of horseback riding). Here, the plaintiff was engaged in professional horse racing activity and admitted that inherent risks of training a horse include a horse’s propensity to collide with other objects.
Furthermore, the plaintiff understood the nature of the risk involved. As the First District Court of Appeal explained in McGraw v. R & R Investments, Ltd., 877 So.2d 886 (Fla. 1st DCA 2004)[3]:
It appears reasonably clear to us from our reading of the committee’s comments that the legislature’s restoration of the affirmative defense of assumption of risk for equine owners or sponsors referred only to express assumption of risk, meaning that unless the plaintiff actually knows or fully understands the nature of the risk, the risk assumed would be, as the current state of the law requires, only implied. In the absence of a participant’s full appreciation that he or she is undertaking the risk of the sponsor’s nonliability for any injuries, we can only conclude that the committee’s reference to “assumption of risk” as a bar to one’s recovery of damage pertained exclusively to express assumption of risks, and if the participant did not have actual knowledge of this risk, *260 the legislature instead intended that the risk be implied, and therefore, the statutory bar was inapplicable.
Id. at 891-92.
Here, the plaintiff admitted that the location of the dirt mound was open and obvious to him and testified that the condition on the track was “an accident looking to happen....” This renders his assumption of that risk express, not implied. As such, the trial court correctly directed a verdict for the defendant on this alternative ground. See Tilson v. Russo, 30 A.D.3d 856, 818 N.Y.S.2d 311 (N.Y.App.Div.2006) (summary judgment entered against experienced recreational horseback rider when the participant was injured due to the sudden and unintended action of the horse, which was a risk inherent in the sport of horseback riding and known to the participant).
I therefore respectfully dissent. I would affirm.

. The rule is well-established that “[t]he courts will not ascribe to the Legislature an intent to create absurd or harsh consequences, and so an interpretation avoiding absurdity is always preferred.” City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla. 1950).

. Although the Florida Supreme Court in Ashcroft reversed the Third District Court of Appeal by finding that there was no express assumption of risk because “[r]iding on a track with a negligently placed exit gap is not an inherent risk in the sport of horse racing,” this decision pre-dated the enactment of chapter 773, effective May 5, 1993. Ashcroft, 492 So.2d at 1311.

.In McGraw, the First District held that equine immunity under section 773.02 did not apply because the defendant had failed to comply with the statutory mandate to post and maintain a specific warning notice as required by section 773.04, Florida Statutes (2004). McGraw, 877 So.2d at 890.