IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BRIAN SCHERER,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellant,

v.

CASE NO. 1D14-2205

VOLUSIA COUNTY
DEPARTMENT OF
CORRECTIONS AND
VOLUSIA COUNTY RISK
MANAGEMENT,

      Appellees.

_____/

Opinion filed July 8, 2015.

An appeal from an order of the Judge of Compensation Claims.
Wilbur W. Anderson, Judge.

Date of Accident: October 29, 2009; January 27, 2012.

Bill McCabe, Longwood, and Keith C. Warnock, Daytona Beach, for Appellant.

Patrick John McGinley of the Law Office of Patrick John McGinley, P.A., Winter Park, and Arthur U. Graham, DeLand, for Appellees.

BENTON, J.

      In this workers' compensation case, a correctional officer appeals an order of

a judge of compensation claims ruling him ineligible under section 112.18(1)(b)4.,

Florida Statutes (2013), for the presumption of occupational causation set out in section 112.18(1)(a), Florida Statutes (2013), and denying the compensability of his heart condition for that reason. Persuaded section 112.18(1)(b)4. did not strip him of the presumption available to correctional officers regarding disabilities caused by heart disease resulting in "disablement" before July 1, 2010, we reverse and remand for further proceedings.

"Although heart disease is not ordinarily compensable as an occupational disease, the Florida Legislature . . . enacted section 112.18(1) . . . , which establishe[d] a statutory presumption that heart disease suffered by a fireman [or certain others including correctional officers] is connected with the exertions of his work . . . ." Sledge v. City of Fort Lauderdale, 497 So. 2d 1231, 1233 (Fla. 1st DCA 1986) (citation omitted). "Section 112.18, Florida Statutes (2009)—variously known as the 'Firefighter's Presumption,' the 'Heart and Lung Bill' or the 'Heart–Lung Statute,' see 9 Patrick John McGinley, Fla. Prac. Workers' Comp. with Forms § 11:6 (2012 ed.)—creates a rebuttable presumption of occupational causation for disabling heart disease (among other health conditions) suffered by correctional officers (among others) who meet certain prerequisites. The presumption is dispositive unless rebutted by medical evidence. See Fuller v. Okaloosa Corr. Inst., 22 So. 3d 803, 806 (Fla. 1st DCA 2009)." Walters v. State, DOC/Div. of Risk Mgmt., 100 So. 3d 1173, 1174 (Fla. 1st DCA 2012) (footnote omitted).

2

In the present case, after being diagnosed with cardiomyopathy, Brian Scherer stopped working as a correctional officer for Volusia County on October 27, 2009, because of his heart condition. The Mayo Clinic in Jacksonville recommended that he be placed on a heart transplant list. In December of 2009, however, he had a defibrillator implanted, and he returned to work on April 27, 2010. But his condition deteriorated thereafter until he retired on January 27, 2012. In March of 2013, he had a heart transplant.

In June and September of 2013, he filed a total of five petitions for workers' compensation benefits alleging a compensable heart condition under two dates of accident (disablement): October 29, 2009, and January 27, 2012. All petitions—each of which relied on section 112.18—were consolidated. Volusia County defended, in part, on grounds that the section 112.18 presumption was not available because appellant did not file any petition within 180 days of leaving employment. Without the presumption, appellant concedes, his claims fail.

This is not a statute of limitations case—no statute of limitations question has been raised on appeal—but the date on which heart disease caused appellant's disability figures importantly in our analysis. By statute, "'the disablement or death of an employee resulting from an occupational disease . . . shall be treated as the happening of an injury by accident. . . .' Section 440.151(1), Florida Statutes (1969)." Hoppe v. City of Lakeland, 691 So. 2d 585, 586-87 (Fla. 1st DCA 1997)

3

(quoting Am. Beryllium Co. v. Stringer, 392 So. 2d 1294, 1295-96 (Fla.1980)). "In occupational disease cases, . . . it is the disability and not the disease which determines the compensability of a claim." Id. at 587.

Section 112.18(1)(b), which became effective on January 1, 2011, see Chapter 2010-175, section 2, at 2184-85, 2216, Laws of Florida, reads as follows:

> (b)1. For any workers' compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010, a . . . correctional officer . . . is presumed not to have incurred such disease in the line of duty . . . if the . . . officer:
>
> a. Departed in a material fashion from the prescribed course of treatment . . . ; or
>
> b. Was previously compensated pursuant to this section . . . .
>
> 2. As used in this paragraph, "prescribed course of treatment" means . . . .
>
> 3. If there is a dispute as to the appropriateness of the course of treatment prescribed . . . .
>
> 4. A law enforcement officer, correctional officer, or correctional probation officer is not entitled to the presumption provided in this section unless a claim for benefits is made prior to or within 180 days after leaving the employment of the employing agency.

The Judge of Compensation Claims ruled that the July 1, 2010 cut-off date applies only to subparagraph (1)(b)1., and not to subparagraph (1)(b)4.

4

The Judge of Compensation Claims also ruled, as to both dates of accident, that appellant had not made a claim prior to or within 180 days after leaving his employment with the Volusia County Department of Corrections, and in the final compensation order deemed him ineligible for the section 112.18(1)(a) presumption on that basis:

> 8. Claimant argues the reference to claims "filed under this section and chapter 440 occurring on or after July 1, 2010" means the 2010 amendments only apply to workers' compensation claims involving dates of accident/disablement on or after July 1, 2010. Does the sentence mean any petition for benefits, regardless of the date of accident, filed on or after July 1, 2010, is subject to section 112.18(1)(b)? Or does it mean, as Claimant argues, that the amendment does not apply to dates of accident/disablement before July 1, 2010, regardless of when the petition for benefits is filed?
>
> 9. The Legislature certainly used a curious grammatical construction when it chose to follow the verb "filed" with the verb "occurring." I conclude it is unnecessary to construe the sentence containing the reference to July 1, 2010, to decide this case because it is in subparagraph 1. of paragraph (b). The language at issue in this case is in subparagraph 4. of paragraph (b). Applying the canons of statutory interpretation known as the scope-of-subparts canon[5] and the nearest-reasonable-referent canon,[6] I conclude the reference to July 1, 2010, relates only to subparagraph 1., not to the 180-day time limitation in subparagraph 4.
>
> [5] "Material within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts." Scalia and Garner, Reading Law: The Interpretation of Legal Texts 156 (2012).

5

[6] "When the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent." Scalia and Garner, Reading Law: The Interpretation of Legal Texts 152 (2012).

Claimant argued below, and argues on appeal, that the entirety of subsection (1)(b) applies only to workers' compensation cases involving dates of disablement on or after July 1, 2010.

We agree. All subparagraphs (also referred to as sub-subsections) of paragraph (1)(b) should be read in pari materia, not only because of the structure of the text, but also because the subparagraphs of paragraph (1)(b) were all enacted together, as part of the same amendment to section 112.18, and all took effect together on January 1, 2011. "'[S]tatutes relating to the same subject matter should be read in pari materia, and such rule is particularly applicable where such statutes are enacted as part of the single act.'" G.G. v. Fla. Dep't of Law Enforcement, 97 So. 3d 268, 272 (Fla. 1st DCA 2012) (quoting McGraw v. R and R Inv., Ltd., 877 So. 2d 886, 890 (Fla. 1st DCA 2004)). The scope-of-subparts canon notwithstanding, nothing in the text gives reason to believe that different effective dates were intended for different provisions—indented or otherwise—within paragraph (1)(b). No other or alternative date was stated for any other subparagraph of paragraph (1)(b), nor does any logical or textual basis for assigning different dates to different operative provisions of this unitary enactment suggest itself.

6

The Judge of Compensation Claims also purported to rely on the nearest-reasonable-referent canon in construing a paragraph comprised of several subparagraphs, even though that canon has only to do with the effect to be given to "modifiers" within a single sentence. The canon holds simply that, whether coming before or after what is modified, modifiers (adjectives, adverbs, prepositional phrases, restrictive clauses) should be read as modifying the nearest noun, verb, or other sentence element to which they can reasonably be said to pertain. The canon calls for a commonsense interpretation of the way in which words are put together to form phrases, clauses, or sentences, and has little or nothing to do with how different paragraphs and subparagraphs should be understood in relation to one another.

In the alternative, the Judge of Compensation Claims ruled that the crucial date for purposes of the statute was not the date of accident or disablement but the date on which a worker filed a claim for workers' compensation benefits. The final compensation order explains his reasoning:

> Alternatively, if the date reference[d] in section 112.18(1)(b)1. applies to section 112.18(1)(b)4., it pertains to all claims filed on or after July 1, 2010, regardless of the date of accident
>
> 10. If the first sentence of section 112.18(1)(b)1. does apply to section 112[.18](1)(b)4., I construe the sentence to mean the amended statute applies to all claims filed on or after July 1, 2010, regardless of the date of accident. As I see it, there are two ways to give meaning

7

to the sentence. One is to read it as saying the amended statute applies to all cases where the <u>filing</u> of a claim <u>occurs</u> on or after July 1, 2010. The other is to read it as saying, "For any workers' compensation claim filed under this section and chapter 440 <u>for accidents</u> occurring on or after July 1, 2010…." Because the latter interpretation would require me to insert words into the statute that the Legislature did not use, I reject the latter interpretation and accept the former.

While the compound phrase "For any workers' compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010…." is not unambiguous, the learned judge's construction has the effect of rendering the word "occurring" in subparagraph (1)(b)1. meaningless surplus.

No part of a statute, not even a single word, should be ignored, read out of the text, or rendered meaningless, in construing the provision. "'[T]he Legislature does not intend to enact useless provisions, and courts should avoid readings that would render a part of a statute meaningless.'" <u>G.G.</u>, 97 So. 3d at 273 (quoting <u>State v. Goode</u>, 830 So. 2d 817, 824 (Fla. 2002)). "Basic to our examination of statutes, and an important aspect of our analysis here, is the 'elementary principle of statutory construction that significance and effect must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage.' <u>Gulfstream Park Racing Ass'n v. Tampa Bay Downs, Inc.</u>, 948 So. 2d 599, 606 (Fla. 2006) (quoting <u>Hechtman v. Nations Title Ins. of</u>

8

N.Y., 840 So. 2d 993, 996 (Fla. 2003)).” Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Schools, Inc., 3 So. 3d 1220, 1233 (Fla. 2009).

In construing the statute, we must be at pains to avoid rendering the word “occurring” “totally redundant and without meaning because [it] would simply refer to the same [thing, i.e., filing] . . . already clearly described in other language in the same statutory provision.” Gulfstream Park, 948 So. 2d at 605. To interpret “occurring” as totally redundant or as meaningless would be “contrary to accepted rules of statutory construction.” Id. at 606. The dissent’s contention that the only date stated anywhere in the paragraph at issue (notably, in the introductory portion thereof) does not pertain is even more problematic.

In deciding what meaning “occurring” was intended to convey, we naturally ask why the word “occurring” appears in the statute at all: If the Legislature had intended, as the Judge of Compensation Claims concluded it did, that the date of filing be determinative, it could simply have omitted the word “occurring.” In that way, the subparagraph which now begins “For any workers’ compensation claim filed under this section and chapter 440 occurring on or after July 1, 2010 . . . .” would have begun “For any workers’ compensation claim filed under this section and chapter 440 on or after July 1, 2010 . . . .” It would have been a simple matter to excise “occurring”; and legislative intent to make the date of filing determinative

9

would have been clear. That the Legislature did not omit "occurring" suggests, therefore, that it did not intend to make the date of filing determinative.

If the date of filing the claim is not determinative, the date of disablement or the occurrence of an industrial injury must be determinative. See Bautista v. State, 863 So. 2d 1180, 1185 (Fla. 2003) (applying a "common-sense approach" to statutory interpretation in order to give effect to legislative intent). We glean this from use of the elliptical "occurring" itself. In legal parlance, claims arise, may remain viable or be extinguished, can be stated, pleaded or alleged, and may be filed, settled, compromised, abandoned, dismissed, prosecuted, defended, litigated, and adjudicated. Rarely, if ever, however, do claims "occur." Industrial accidents and occupational diseases, on the other hand, do "occur" from time to time. As discussed ante, occupational diseases become "an injury by accident" (and thus "occur") upon the date of disablement, partial or total, a date which falls on one side of July 1, 2010 or the other. Once an industrial injury occurs, moreover, the term "claim" refers, not only to a petition for benefits or other assertion of rights, but also to the vesting of rights arising under chapter 440 on account of the injury.*

---

* A "claim" that must be adjusted in accordance with law arises by virtue of an industrial injury, whether or not a petition for benefits has been filed. For example, Florida Administrative Code Rules 69L-3.002 through 3.025 (under the Chapter Title "Workers' Compensation Claims") describe duties and obligations of "Claims-handling Entit[ies]" when industrial injuries occur, which include: filing a first report of injury upon notice (from any source), providing informational material to the injured employee, filing multiple forms, and providing benefits—all

10

Here, appellant alleged two different dates of accident, one before and one after July 1, 2010.  As we construe the statute, he is entitled to the "heart lung" presumption as regards the first date of accident but not as regards the second.  Because the presumption is rebuttable, see Caldwell v. Div. of Ret., Fla. Dep't of Admin., 372 So. 2d 438 (Fla. 1979), the case should be remanded so the parties can put on evidence as to occupational causation.

Reversed and remanded.

WOLF, J., CONCURS; RAY, J., DISSENTS WITH OPINION.

---

regardless of whether the injured employee ever files a formal petition for benefits. Similarly, sub-subsection 440.105(2)(b), Florida Statutes (2014), makes it unlawful for an insurance company to revoke an insurance policy "because an employer has returned an employee to work or hired an employee who has filed a workers' compensation claim." (Emphasis supplied.)  Under this statutory provision an insurance company could not revoke a policy on grounds an employer had returned an employee to work, or hired an employee entitled to benefits under chapter 440, even if the injured employee had not filed a formal petition for benefits. Furthermore, sub-subsections 440.20(11)(a) and (c) permit a "claimant" to settle a workers' compensation case or claim, whether or not a petition for benefits has ever been filed.  The dissent unjustifiably assumes that the terms "petition for benefits" and "claim" can be used interchangeably in the context of the present case.

RAY, J., dissenting.

Because I conclude that subparagraph 112.18(1)(b)4 renders Appellant ineligible for the presumption of occupational causation for both dates of accident, I respectfully dissent.

To be entitled to the rebuttable presumption of occupational causation in paragraph 112.18(1)(a), Florida Statutes (2013), which provides that a heart condition like Appellant's is presumed to be the result of an accident in the line of duty, a claimant[*] is required under subparagraph 112.18(1)(b)4 to "make" a claim for benefits prior to or within 180 days after leaving the employment of the employing agency. The Judge of Compensation Claims correctly ruled that Appellant did not meet this deadline. It is undisputed that Appellant did not file a petition for benefits within this time period. And to the extent that this subparagraph can be construed to include activities other than filing a petition for benefits, the Judge of Compensation Claims found that Appellant failed to take any action that constituted a claim for benefits within the applicable time frame.

To challenge this ruling, Appellant argues, and the majority agrees, that the date reference in subparagraph 112.18(1)(b)1 qualifies subparagraph (b)4, such that the 180-day limitation period applies only to cases with dates of accident on or after

---

[*] The 180-day limitation period applies to law enforcement officers, correctional officers, and correctional probation officers. § 112.18(1)(b)4.

12

July 1, 2010. I disagree. In my view, the date reference in subparagraph (b)1 is a red herring. Just because subparagraphs (b)1 and (b)4 were enacted together and became effective on the same date, does not mean that a qualifier within subparagraph (b)1 governs or controls the applicability of subparagraph (b)4. The two provisions are independent of each other, as evidenced by both their structure and content.

In rejecting Appellant's argument that language from subparagraph (b)1 constrains application of subparagraph (b)4, the Judge of Compensation Claims appropriately relied on the scope-of-subparts canon, a rule of interpretation grounded in textualist principles. The scope-of-subparts canon provides that "[m]aterial within an indented subpart relates only to that subpart; material contained in unindented text relates to all the following or preceding indented subparts." Scalia and Garner, Reading Law: The Interpretation of Legal Texts 156-60 (2012). The logic of this canon can be observed in the specific structure of the statute at issue: the July 1, 2010, date restriction is not contained in an overarching or general "paragraph (b)" that would have equal applicability to the provisions of its subparts. Instead, the date restriction is contained only in subpart (b)1, which contains an independent clause ending in a period, suggesting that at least structurally, "what happens in [subpart (b)1] stays in [subpart (b)1]." Id. at 157.

The content of the two subparts supports the inference derived from their structure that one does not limit the other. Subparagraph (b)1 creates a reverse

13

presumption ("a[n] . . . officer . . . is presumed not to have incurred such disease in the line of duty if"), whereas subparagraph (b)4 establishes a deadline for a claimant to invoke the presumption ("[an] officer . . . is not entitled to the presumption provided in this section unless a claim for benefits is made prior to or within 180 days"). In addition, the key terminology is different. Subparagraph (b)1's words "claim" and "occurring" are not the same as subparagraph (b)4's "claim for benefits" and "made." The Legislature's use of the phrase "claim for benefits" evinces an intention more narrow than the word "claim" might convey – specifically, an intent to refer to the claimant-initiated process of obtaining workers' compensation benefits. See Ocean Reef Club, Inc. v. Wilczewski, 99 So. 3d 1, 11-12 (Fla. 3d DCA 2012) (Shepherd, J., dissenting). The subparts at issue announce distinct principles of law, and there is no reason apparent from the text why they should be tied together by a date reference that appears in only one of them.

Once subparagraph (b)1 is decoupled from subparagraph (b)4, the issue becomes whether the 180-day time frame in (b)4 is a procedural enactment, and thus retroactive under Menendez v. Progressive Express Insurance Co., 35 So. 3d 873 (Fla. 2010). Menendez sets out a two-pronged test for determining retroactivity:

> First, the Court must ascertain whether the Legislature intended for the statute to apply retroactively. Second, if such an intent is clearly expressed, the Court must determine whether retroactive application would violate any constitutional principles.

Id. at 877. Here, the legislative intent of retroactivity is evident from the phrase "claim for benefits" and the absence of any mention of dates of accident. Given that existence of a claim for benefits presumes a prior date of accident, subparagraph (b)4 clearly contemplates claims for benefits that relate to dates of disablement preceding its enactment.

The second prong of Menendez is also met as this court's precedent has upheld the constitutionality of retroactive application of substantially similar provisions. In Seminole County Sheriff's Office v. Johnson, 901 So. 2d 342 (Fla. 1st DCA 2005), we held that a 2002 amendment to subsection 112.18(1), which expanded the class of workers entitled to the presumption, was a procedural enactment that applies retroactively without regard to the date of accident and injury. Id. at 343. We reasoned that the amendment "changed only the procedure of establishing entitlement to workers' compensation benefits. Appellant's substantive right to those benefits, or lack thereof, has remained unchanged since the date of his first stroke." Id. at 344 (citation omitted).

In Brown v. L.P. Sanitation, 689 So. 2d 332 (Fla. 1st DCA 1997), on which we relied in Johnson, we likewise found that an enactment, which eliminated a rebuttable presumption that an overpayment of benefits was an irrevocable gift from the carrier to the injured worker, was procedural and therefore applied retroactively. We observed that elimination of the presumption "does not rule out proof that a

payment was a gift . . . . [It] changed only the procedural means and methods of establishing entitlement to benefits or offsets which flow from substantive rights that have remained unchanged since the date of [the accident]." Id. at 333.  Similarly here, nothing in subparagraph 112.18(1)(b)4 prohibits Appellant from pursuing workers' compensation benefits for his heart condition. It does, however, remove an evidentiary presumption and change the mode of procedure "unless a claim for benefits is made prior to or within 180 days after leaving the employment of the employing agency."

For these reasons, I would affirm the order of the Judge of Compensation Claims and conclude that subparagraph 112.18(1)(b)4 bars reliance on the presumption for both of Appellant's dates of accident.